Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF ALEJANDRO SANCHEZ,
BERTHA SANCHEZ, IRENE MAMOURIEH,
CRISTINA GIRARDI, and MARINA SANCHEZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ESTATE OF ALEJANDRO SANCHEZ, et al., | Case No. 1:18-cv-00977-DAD-BAM |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| COUNTY OF STANISLAUS, et al., | Date:       November 20, 2018 |
| Defendants. | Time:       9:30 a.m. |
| | Location:   Robert E. Coyle U.S. Courthouse |
| | 2500 Tulare Street |
| | Fresno, California 93721 |
| | Courtroom:  5 (7th Floor) |
| | Judge:      Hon. Dale A. Drozd |

# TABLE OF CONTENTS

I.   **INTRODUCTION**...................................................................................................1

II.  **STATEMENT OF RELEVANT FACTS**......................................................1

III. **ARGUMENT**......................................................................................................1

   A.   **DEFENDANT STANISLAUS COUNTY SHERIFF'S DEPARTMENT IS A PROPER PARTY BECAUSE, UNDER CALIFORNIA LAW, IT IS A "SEPARATELY SUEABLE ENTITY" INDEPENDENT OF DEFENDANT COUNTY OF STANISLAUS.**........................2

   B.   **FIRST CLAIM: UNREASONABLE FORCE (FOURTH AMENDMENT)** ..........6

      1.   Entity Defendants.....................................................................................7

      2.   Sheriff Christianson ...............................................................................8

   C.   **THIRD CLAIM: RIGHT OF ASSOCIATION (FIRST AMENDMENT)** ............10

      1.   Cognizable Legal Theory......................................................................11

      2.   Sufficient Factual Allegations..............................................................12

   D.   **FOURTH CLAIM: UNREASONABLE FORCE (CAL. CONST. ART. I, § 13)**...........14

      1.   Right of Action .....................................................................................14

         a.   *Affirmative Intent To Authorize A Damages Action To Remedy Violations* ..........15

         b.   *Constitutional Tort Analysis* ...............................................17

            i.    Adequacy of Alternative Remedies ......................................17

            ii.   Changes to Established Tort Law ..........................................19

            iii.  Nature and Significance of Constitutional Provision............20

            iv.   Special Factors......................................................................20

      2.   Entity Defendants..................................................................................21

      3.   Sheriff Christianson .............................................................................22

   E.   **FIFTH CLAIM: BANE ACT (CAL. CIV. CODE § 52.1(B))** .......................23

      1.   Plaintiff Estate......................................................................................23

      2.   Plaintiff Bertha Sanchez ......................................................................25

   F.   **SEVENTH CLAIM: NEGLIGENCE (CAL. CODE CIV. PROC. § 377.30)** ...........26

   G.   **EIGHTH CLAIM: WRONGFUL DEATH (CAL. CODE CIV. PROC. § 377.60)** .........29

IV.  **CONCLUSION** ...............................................................................................30

i

# **TABLE OF AUTHORITIES**

### CASES

*A.C. v. Griego*, 2016 U.S. Dist. LEXIS 141508 (E.D. Cal. Oct. 11, 2016) ............................... 8

*Adam v. County of Los Angeles*, 2014 U.S. Dist. LEXIS 198816 (C.D. Cal. Aug. 28, 2014) .................. 29

*Aguilar v. City of South Gate*, 2013 U.S. Dist. LEXIS 10611 (C.D. Cal. Jan. 25, 2013) ......................... 24

*Alexander v. Cal. Dep't of Corr. & Rehab.*, 2014 U.S. Dist. LEXIS 177381 (E.D. Cal. Dec. 23, 2014) 23, 28

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307 (Cal. 1997) ............................................... 19

*Archibald v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 171243 (C.D. Cal. Oct. 2, 2018) .......... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 1

*Ass'n of Irritated Residents v. C&R Vanderham Dairy*, 435 F. Supp. 2d 1078 (E.D. Cal. 2006) ............. 15

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ............................................ 1

*Barone v. City of Springfield*, 902 F.3d 1091 (9th Cir. 2018) ................................................. 5

*Bass v. City of Fremont*, 2013 U.S. Dist. LEXIS 32590 (N.D. Cal. Mar. 7, 2013) ........................ 23, 27

*Bd. of Dirs. v. Rotary Club*, 481 U.S. 537 (1987) ........................................................ 10, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 2

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) ........................................... 14

*Booke v. County of Fresno*, 98 F. Supp. 3d 1103 (E.D. Cal. 2015) ............................................. 9

*Bordegaray v. County of Santa Barbara*, 2016 U.S. Dist. LEXIS 172269 (C.D. Cal. Dec. 12, 2016) ...... 27

*Brewer v. Gen. Nutrition Corp.*, 2014 U.S. Dist. LEXIS 47137 (N.D. Cal. Apr. 4, 2014) ....................... 1

*Brown v. Fresno Unified Sch. Dist.*, 2012 U.S. Dist. LEXIS 156251 (E.D. Cal. Oct. 30, 2012) .............. 13

*Brown v. State*, 89 N.Y.2d 172 (N.Y. 1996) ................................................................... 16

*Butler v. Riverside County*, 2015 U.S. Dist. LEXIS 53061 (C.D. Cal. Apr. 22, 2015) .......................... 6

*C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861 (Cal. 2012) ............................... 27

*Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386 (C.D. Cal. Aug. 27, 2008) ..................... 16

*Cameron v. Craig*, 713 F.3d 1012 (9th Cir. 2013) ............................................................ 24

*Carlson v. Green*, 446 U.S. 14 (1980) ....................................................................... 19

*Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138 (Cal. Ct. App. 2005) ................................. 22

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) .............................................. 7

ii

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
*Estate of Sanchez v. County of Stanislaus*, United States District Court, Eastern District of California, Case No. 1:18-cv-00977-DAD-BAM

*Chapman v. Jarrell*, 2005 U.S. Dist. LEXIS 31132 (S.D. W. Va. Nov. 16, 2005) ....................................9

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) .............................................23

*Chavez v. Astrue*, 2012 U.S. Dist. LEXIS 85806 (E.D. Cal. June 19, 2012)...............................13

*Cochran v. Newell*, 2017 U.S. Dist. LEXIS 214187 (D. Mont. Dec. 5, 2017).............................4

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................................1

*Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766 (Cal. Ct. App. 2017) ...................19, 24

*Creer v. City of Vallejo*, 2015 U.S. Dist. LEXIS 78714 (E.D. Cal. June 16, 2015) ....................................8

*Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992)..............................................................2, 5

*Degrassi v. Cook*, 29 Cal. 4th 333 (Cal. 2002) .................................................................18

*Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790 (Cal. Ct. App. 2006) ..........................28, 30

*Derritt v. City of Pomona*, 2014 U.S. Dist. LEXIS 108645 (C.D. Cal. May 23, 2014) ............................6

*Dirks v. County of Los Angeles*, 2008 U.S. Dist. LEXIS 129462 (C.D. Cal. Apr. 10, 2008)...................28

*Doe v. Beard*, 63 F. Supp. 3d 1159 (C.D. Cal. 2014) ......................................................23

*Duffy v. Cal. State Pers. Bd.*, 232 Cal. App. 3d 1 (Cal. Ct. App. 1991)...............................19, 20

*Dunlap v. Anchorage Police Dep't*, 2016 U.S. Dist. LEXIS 29659 (D. Alaska Mar. 8, 2016) ..................4

*Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (Cal. 2003) ........................................21, 29

*Ennis v. Mortg. Tree Lending, Inc.*, 2009 U.S. Dist. LEXIS 101255 (E.D. Cal. Oct. 29, 2009)................1

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................1

*Espinosa v. City & County of San Francisco*, 2011 U.S. Dist. LEXIS 100291 (N.D. Cal. Sep. 7, 2011) .14

*Estate of Adkins v. County of San Diego*, 2018 U.S. Dist. LEXIS 71715 (S.D. Cal. Apr. 25, 2018).........24

*Estate of Duran v. Chavez*, 2015 U.S. Dist. LEXIS 163863 (E.D. Cal. Dec. 4, 2015) ............................8

*Estate of Zachary v. County of Sacramento*, 2010 U.S. Dist. LEXIS 33226 (E.D. Cal. Apr. 2, 2010)28, 30

*Everson v. Bd. of Educ.*, 330 U.S. 1 (1947) ...............................................................10

*Fenton v. Groveland Cmty. Servs. Dist.*, 135 Cal. App. 3d 797 (Cal. Ct. App. 1982) ............................21

*Fetter v. Placer County Sheriff*, 2015 U.S. Dist. LEXIS 3976 (E.D. Cal. Jan. 12, 2015) ...................28, 30

*Fisher v. Kealoha*, 869 F. Supp. 2d 1203 (D. Haw. 2012) .........................................................4

*Fredrick v. United States*, 163 F.2d 536 (9th Cir. 1947) .......................................................15

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995)................................................10

iii

*Galindez v. Miller*, 285 F. Supp. 2d 190, 198-99 (D. Conn. 2003) .................................................8

*Garcia v. County of Fresno*, 2005 U.S. Dist. LEXIS 31624 (E.D. Cal. Nov. 21, 2005) .....................22, 29

*Garcia v. County of Riverside*, No. 5:13-cv-00616-JGB-SP, ECF No. 99 (C.D. Cal. April 28, 2017) ......16

*Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016) ...............................................27

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) .........................................................7

*Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (Cal. Ct. App. 2008) ..........................27

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................................................6

*Graham v. County of Los Angeles*, 2011 U.S. Dist. LEXIS 95469 (C.D. Cal. Aug. 25, 2011) ................11

*Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (Cal. 1970) .............................................................26

*Halcomb v. City of Sacramento*, 2016 U.S. Dist. LEXIS 81490 (E.D. Cal. June 20, 2016) .......................8

*Han v. City of Folsom*, 695 F. App'x 197 (9th Cir. 2017) .............................................................26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................................................19

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) .......................................................9

*Harris v. County of Sacramento*, 2018 U.S. Dist. LEXIS 133935 (E.D. Cal. Aug. 7, 2018) .....................5

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) .....................................................................12

*Hayes v. County of San Diego*, 57 Cal. 4th 622 (Cal. 2013) .........................................................26

*Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ...............................................26, 29

*Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157 (C.D. Cal. 2018) ...............................26, 29

*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) .........................................................................4, 5

*Holcomb v. Ramar*, 2013 U.S. Dist. LEXIS 157833 (E.D. Cal. Nov. 1, 2013) .......................................6

*Hurtado v. County of Sacramento*, 2014 U.S. Dist. LEXIS 115649 (E.D. Cal. Aug. 19, 2014) ................15

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ....................................................2, 13

*In re William G.*, 40 Cal. 3d 550 (Cal. 1985) ..........................................................................20

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003) .............................................15

*J.P. v. County of Alameda*, 2018 U.S. Dist. LEXIS 69945 (N.D. Cal. Apr. 24, 2018) ......................11, 12

*Jacob B. v. County of Shasta*, 40 Cal. 4th 948 (Cal. 2007) .........................................................18

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ..............................................................................1

*Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976 (C.D. Cal. Mar. 3, 2014) ...................................23, 25

iv

*Johnson v. Cate*, 2012 U.S. Dist. LEXIS 44168 (E.D. Cal. Mar. 29, 2012)................................8

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) ......................................................................9

*Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360 (Cal. Ct. App. 2017)...........................14

*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621 (9th Cir. 1988)..........................3, 6

*Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300 (Cal. 2002).............14, 15, 16, 17, 18, 19, 20, 21

*Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 109294 (E.D. Cal. Aug. 6, 2014)......................11

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017) ..............................................10, 12

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) ......................................................................11

*Kehr Packages, Inc. v. Fidelcor*, Inc., 926 F.2d 1406 (3d Cir. 1991) ......................................15

*Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985) ....................................................11

*Kerbs v. Madison County*, 2014 U.S. Dist. LEXIS 28990 (D. Idaho Mar. 5, 2014) .................4

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129 (N.D. Cal. 2009) ......................................22

*Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183 (E.D. Cal. 2018) ..............24

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) .....................................................9

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003)................................................................6

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)...................................................11, 12

*Lee v. N. Nev. Adult Mental Health Servs.*, 2007 U.S. Dist. LEXIS 64028 (D. Nev. Aug. 28, 2007) .........5

*Lindsay v. Fryson*, 2012 U.S. Dist. LEXIS 93814 (E.D. Cal. July 5, 2012) ...........................27

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)........................................................................14

*Lum v. County of San Joaquin*, 756 F. Supp. 2d 1243 (E.D. Cal. 2010) ................................27

*Mann v. City of Sacramento*, 2017 U.S. Dist. LEXIS 152383 (E.D. Cal. Sep. 19, 2017)........12

*Mann v. City of Sacramento*, 2018 U.S. App. LEXIS 25462 (9th Cir. Sep. 7, 2018) .........12, 13

*Martinez v. City of Colton*, 2016 U.S. Dist. LEXIS 117787 (C.D. Cal. Aug. 30, 2016)............6

*Martinez v. Tulare County*, 2016 U.S. Dist. LEXIS 158212 (E.D. Cal. Nov. 14, 2016)...........27

*Melendres v. Maricopa County*, 815 F.3d 645 (9th Cir. 2016) .................................................4

*Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) ..........................................19

*Menotti v. City of Seattle*, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005).....................................10

*Meyer v. City & County of Honolulu*, 6 Haw. App. 505 (Haw. Ct. App. 1986)........................4

v

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
*Estate of Sanchez v. County of Stanislaus*, United States District Court, Eastern District of California, Case No. 1:18-cv-00977-DAD-BAM

*Mierlot v. Tri-City Healthcare Dist.*, 2014 U.S. Dist. LEXIS 115027 (S.D. Cal. Aug. 15, 2014) ...............1

*Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252 (C.D. Cal. Mar. 15, 2007) ............16

*Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) ................................................................2

*Monday v. McDonnell*, 2015 U.S. Dist. LEXIS 170913 (C.D. Cal. Dec. 18, 2015) ................................6

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................5, 7, 18

*Monroe v. Pape*, 365 U.S. 167 (1961) ..................................................................2

*Moresi v. State*, 567 So.2d 1081 (La. 1990) ...........................................................16

*Mulligan v. Nichols*, 2013 U.S. Dist. LEXIS 198643 (C.D. Cal. Oct. 10, 2013) ...............................26, 27

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (Cal. Ct. App. 2004) .......................................26, 29

*Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016) .......................25

*Neylon v. County of Inyo*, 2016 U.S. Dist. LEXIS 161326 (E.D. Cal. Nov. 18, 2016) ........................6, 10

*Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448 (Cal. Ct. App. 2002) .......................................19

*Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123 (E.D. Cal. 2013) ..........................................3

*OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822 (C.D. Cal. Oct. 7, 2014) ..................16, 17

*Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875 (9th Cir. 1987) ..................................14

*People v. Brisendine*, 13 Cal. 3d 528 (Cal. 1975)...................................................................20

*People v. Cahan*, 44 Cal. 2d 434 (Cal. 1955) ......................................................................20

*Peterson v. City of Long Beach*, 24 Cal. 3d 238 (Cal. 1979)............................................................3

*Phillips v. County of Fresno*, 2013 U.S. Dist. LEXIS 170511 (E.D. Cal. Dec. 2, 2013) .....................8, 23

*Pierce v. Multnomah County*, 76 F.3d 1032 (9th Cir. 1996) ...........................................................6

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017)........................................................14

*Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980) ..............................................................19

*Randolph v. City of East Palo Alto*, 2008 U.S. Dist. LEXIS 15607 (N.D. Cal. Mar. 1, 2008) .................28

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)............................................23, 24

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984)............................................................10, 11

*Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002)........................................................21, 22, 30

*Rodgers v. City of Pasadena*, 2016 U.S. Dist. LEXIS 173019 (C.D. Cal. Dec. 12, 2016)........................6

*Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000) ......................................23, 28

vi

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ......................7, 8, 9, 10, 22, 25, 28, 30

*Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 990 (C.D. Cal. 2014) ........................................24, 25

*Runnels v. City of Vancouver*, 2011 U.S. Dist. LEXIS 45377 (W.D. Wash. Apr. 27, 2011) ......................4

*San Joaquin Deputy Sheriffs' Ass'n v. County of San Joaquin*, 898 F. Supp. 2d 1177 (E.D. Cal. 2012) ....6

*Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006) ................................................................14

*Sanders v. City of Fresno*, 2006 U.S. Dist. LEXIS 48582 (E.D. Cal. July 3, 2006) .................................26

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ....................................................................................................2

*Schmid v. City of Petaluma*, 2012 U.S. Dist. LEXIS 14141 (N.D. Cal. Feb. 6, 2012) .............................20

*Schneider v. Elko County Sheriff's Dep't*, 17 F. Supp. 2d 1162 (D. Nev. 1998) .......................................4

*Shadd v. County of Sacramento*, 2014 U.S. Dist. LEXIS 26143 (E.D. Cal. Feb. 26, 2014) .....................10

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) ........................2, 3, 4, 5

*Shellabarger v. Hale*, 2018 U.S. Dist. LEXIS 147573 (E.D. Cal. Aug. 28, 2018) ...................................15

*Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656 (N.D. Cal. Aug. 24, 2018) ...............15

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ................................................................................6

*Smith v. City of Stockton*, 2018 U.S. Dist. LEXIS 136656 (E.D. Cal. Aug. 10, 2018) ..............................9

*Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213 (C.D. Cal. May 15, 2006) ..........................17

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..................................................................9, 10, 12, 13

*Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001) ..........................................................3, 4, 6

*Stubblefield v. City of Novato*, 2016 U.S. Dist. LEXIS 5662 (N.D. Cal. Jan. 15, 2016) ..........................22

*Stump v. Gates*, 777 F. Supp. 808 (D. Colo. 1991) ....................................................................................4

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex. 2011) .........................................................8

*Tolan v. Cotton*, 572 U.S. 650 (2014) .........................................................................................................6

*Travelers Cas. & Sur. Co. of Am. v. Hunt*, 2016 U.S. Dist. LEXIS 22653 (E.D. Cal. Feb. 23, 2016).......13

*Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909 (N.D. Cal. Oct. 30, 2018) .......................8

*United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005) ..............................................................................4

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993) ...................................................................................24

*Updike v. Clackamas County*, 2015 U.S. Dist. LEXIS 160169 (D. Or. Nov. 30, 2015) .............................4

*Vaccaro v. CVS Pharmacy, Inc.*, 2013 U.S. Dist. LEXIS 99991 (S.D. Cal. July 16, 2013) .....................13

vii

*Vance v. County of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996) ..............................................3

*Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230 (Cal. Ct. App. 2007)......................19

*Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1992)...............................................................11

*Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921 (Md. 1984).........................................................16

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007).........................................................................15

<u>RULES</u>

9th Cir. R. 36-3(a) .........................................................................................................................12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 15

Fed. R. Civ. P. 17(b) .......................................................................................................................3

Fed. R. Civ. P. 17(b)(3)...............................................................................................................2, 4

Fed. R. Civ. P. 17(b)(3)(A)..............................................................................................................2

Fed. R. Civ. P. 8(a)(2) .....................................................................................................................1

<u>STATUTES</u>

Cal. Code Civ. Proc. § 377.60 .......................................................................................................29

Cal. Evid. Code § 200.....................................................................................................................3

Cal. Gov. Code § 811.2................................................................................................................2, 3

Cal. Gov. Code § 815.....................................................................................................................21

Cal. Gov. Code § 815.2..................................................................................................................21

Cal. Gov. Code § 815.2(a)..............................................................................................................19

Cal. Gov. Code § 820.8..................................................................................................................22

Cal. Gov. Code § 945......................................................................................................................2

Wash. Rev. Code § 39.34.030.........................................................................................................5

<u>OTHER AUTHORITIES</u>

Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977)........20

## I.   **INTRODUCTION**

Plaintiffs Estate of Alejandro Sanchez, Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez file the following in opposition to Defendants County of Stanislaus, Stanislaus County Sheriff's Department, and Adam Christianson's motion to dismiss the complaint.

## II.   **STATEMENT OF RELEVANT FACTS**

On May 5, 2018, Alejandro Sanchez was allegedly detained by Stanislaus County Sheriff's Department law enforcement officers, subject to excessive force, and subsequently died in custody.

On July 20, 2018, Plaintiffs Estate of Alejandro Sanchez, Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez (collectively, "Plaintiffs") filed the complaint initiating the instant action in connection with Alejandro Sanchez's death. (ECF No. 1 ("Compl.").)

On September 11, 2018, Defendants County of Stanislaus, Stanislaus County Sheriff's Department, and Adam Christianson (collectively, "Defendants") filed the instant motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 9 & 9-1 ("Memo.").)[1]

## III.   **ARGUMENT**

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court must accept as true the allegations of the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe them in the light most favorable to the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). A complaint need only satisfy the minimal notice-pleading requirements of Fed. R. Civ. P. 8(a)(2), "a short and plain statement," to survive a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). If the allegations of the complaint and information from other permissible sources "plausibly suggest an entitlement to relief," a Fed. R. Civ. P. 12(b)(6) motion must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "The plausibility standard is not akin to a 'probability requirement[.]'" *Id*. at 678.

---

[1] Defendants' counsel has filed a declaration attaching Plaintiffs' complaint as an exhibit. (ECF No. 9-2 at 4-21.) Plaintiffs object to this filing as unnecessary because it is already on the docket. *See, e.g.*, *Mierlot v. Tri-City Healthcare Dist.*, 2014 U.S. Dist. LEXIS 115027, at *5 (S.D. Cal. Aug. 15, 2014); *Brewer v. Gen. Nutrition Corp.*, 2014 U.S. Dist. LEXIS 47137, at *17-19 n.5 (N.D. Cal. Apr. 4, 2014); *Ennis v. Mortg. Tree Lending, Inc.*, 2009 U.S. Dist. LEXIS 101255, at *2 n.1 (E.D. Cal. Oct. 29, 2009).

1

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
*Estate of Sanchez v. County of Stanislaus*, United States District Court, Eastern District of California, Case No. 1:18-cv-00977-DAD-BAM

[T]he court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

## A.   DEFENDANT STANISLAUS COUNTY SHERIFF'S DEPARTMENT IS A PROPER PARTY BECAUSE, UNDER CALIFORNIA LAW, IT IS A "SEPARATELY SUEABLE ENTITY" INDEPENDENT OF DEFENDANT COUNTY OF STANISLAUS.

Plaintiffs have named the Stanislaus County Sheriff's Department as a party to this action. (Compl., ¶11.)

A party's "[c]apacity to sue or be sued is determined … by the law of the state where the court is located…" Fed. R. Civ. P. 17(b)(3).[2] Accordingly, resolution of whether the Stanislaus County Sheriff's Department is subject to suit is "determined by the law of California." *See Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986). Under California law, "[a] public entity may sue and be sued." Cal. Gov. Code § 945. A "'[p]ublic entity' includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov. Code § 811.2.

---

[2] In order to prevent "'state authorities [from] effectively insulat[ing] themselves from constitutional norms simply by developing [state laws] that made it virtually impossible for plaintiffs to [sue],'" *Miller v. Pancucci*, 141 F.R.D. 292, 297-98 (C.D. Cal. 1992), "[t]his state-law determination of capacity to be sued is subject to [an] exception," *Dean v. Barber*, 951 F.2d 1210, 1214 n.4 (11th Cir. 1992)—*i.e.*, Fed. R. Civ. P. 17(b)(3)(A): "[A] partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." As relevant here, 42 U.S.C. § 1983 was specifically enacted to vindicate federal rights against deprivation by state action, where "state laws might not be enforced" and where federal constitutional rights "might be denied by the state agencies." *See Monroe v. Pape*, 365 U.S. 167, 180 (1961).

2

"The courts of California have not expressly determined whether a police department is a public entity under [Cal. Gov. Code §] 811.2." *Shaw*, 788 F.2d at 604. However, the Ninth Circuit has expressly determined that a police department *is* a public entity under Cal. Gov. Code § 811.2. *Id.* at 604-05. The Ninth Circuit reached its conclusion by relying on a California Supreme Court decision, *Peterson v. City of Long Beach*, 24 Cal. 3d 238, 244 (Cal. 1979), which held that a police department is a "public entity" under the California Evidence Code. *Id.*

> [The courts of California have] held that a police department is a public entity under section 200 of the California Evidence Code. That section provides that for purposes of the Evidence Code, a "public entity" includes "a nation, state, county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation whether foreign or domestic." The wording of the two sections [Cal. Evid. Code § 200 and Cal. Gov. Code § 811.2] is nearly identical, except for the inclusion in section 200 of foreign entities, and the California courts have treated the two sections as including the same domestic entities.

*Id.* "Because [Cal. Evid. Code §] 200 and [Cal. Gov. Code §] 811.2 have been construed *in pari materia*, [the Ninth Circuit] conclude[d] that the courts of California would hold that [a] [p]olice [d]epartment is a public entity under [Cal. Gov. Code §] 811.2. Thus, under Fed. R. Civ. P. 17(b) [a] [p]olice [d]epartment may be sued in Federal court." *Id.* at 605; *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988). More recently, in *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001), a sheriff's department sought to distinguish itself from a police department, in an attempt to avoid application of the *Shaw* decision. *Id.* at 565-66. The Ninth Circuit found "no basis for [] a distinction." *Id.* at 565 ("Although the appeals before us, unlike *Shaw* and *Karim Panahi*, confront the suability of a sheriff's department rather than a police department, … we see no basis for [] a distinction.").

First, Defendants argue that "municipal departments … are not separate legal entities…" (Memo. at 4:7-8.) Defendants' argument is plainly wrong where the Ninth Circuit has *explicitly* held that, under California law, "[a sheriff's department] is a separately suable entity." *Streit*, 236 F.3d at 565-66; *see also Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.24 (E.D. Cal. 2013). Defendants' argument is purportedly supported by citation to *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996). (Memo. at 4:8-9.) But Defendants' reliance on the *Vance* decision is ineffective, where that court concluded that a <u>California</u> public entity—the Santa Clara County Department of Corrections—was not subject to suit by reference to <u>Colorado</u> law. *See Vance*, 928 F. Supp. at 996

3

(quoting *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("Under Colorado law municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.'")). Clearly, the *Vance* decision was wrongly decided, where an entity's capacity to be sued is determined "by the law of the state where the court is located…" *See* Fed. R. Civ. P. 17(b)(3).

Second, Defendants argue that "'courts in the Ninth Circuit generally have treated police departments as part of a municipality." (Memo. at 4:10-12 (quoting *Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1214 n.15 (D. Haw. 2012)).) That may be, where many state laws "<u>generally</u>" do not permit municipal departments and bureaus to be subject to suit as separately suable entities. *See United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005) (concurring opinion).[3] Of course, there are exceptions to that "<u>general</u>" rule.[4] As discussed above and relevant here, under California law, police departments and sheriff's departments are recognized to be "separately suable entit[ies]." *See Shaw*, 788 F.2d at 604-05; *Streit*, 236 F.3d at 565-66. Therefore, Defendants' citations to out-of-state courts' decisions that have not permitted suits to proceed against police departments or sheriff's departments are irrelevant where, in this case, the issue in controlled and "determined by the law of California." *See Shaw*, 788 F.2d at 604.

For example, Defendants cite to *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995), in support of their argument. (Memo. at 4:9-10.) But that decision does not support Defendants' argument; it merely reinforces the conclusion that a forum state's law is determinative. There, the plaintiff sued the Tahoma Narcotics Enforcement Team ("TNET"), which was "not a municipality or local governmental entity" but, rather, an "intergovernmental association" that was "composed of several local, county, and state governmental entities, including the Tacoma Police Department, the Sumner Police Department, the

---

[3] Oregon, *see Updike v. Clackamas County*, 2015 U.S. Dist. LEXIS 160169, at *9-10 (D. Or. Nov. 30, 2015), Arizona, *see Melendres v. Maricopa County*, 815 F.3d 645, 647-48 (9th Cir. 2016), Washington, *see Runnels v. City of Vancouver*, 2011 U.S. Dist. LEXIS 45377, at *26-27 (W.D. Wash. Apr. 27, 2011), Idaho, *see Kerbs v. Madison County*, 2014 U.S. Dist. LEXIS 28990, at *13 (D. Idaho Mar. 5, 2014), Nevada, *see Schneider v. Elko County Sheriff's Dep't*, 17 F. Supp. 2d 1162, 1165 (D. Nev. 1998), Montana, *see Cochran v. Newell*, 2017 U.S. Dist. LEXIS 214187, at *12 (D. Mont. Dec. 5, 2017), and Hawai'i, *see Meyer v. City & County of Honolulu*, 6 Haw. App. 505, 506 n.1 (Haw. Ct. App. 1986), do not appear to recognize departments of public entities to be separately suable entities.

[4] Alaska, *see Dunlap v. Anchorage Police Dep't*, 2016 U.S. Dist. LEXIS 29659, at *20 n.59 (D. Alaska Mar. 8, 2016), and California, *see Shaw*, 788 F.2d at 604-05, do recognize departments of public entities to be separately suable entities.

Pierce County Sheriff's Office, the Pierce County Prosecutor's Office and the Washington State Patrol." *Id*. at 791-92. Pursuant to Fed. R. Civ. P. 17(b)(3), the court looked to Washington law to determine if the entities that created TNET did so with the intent to create a separate legal entity subject to suit. *Id*. at 792. The court concluded that they had not. *Id*. (citing Wash. Rev. Code § 39.34.030); *see also Dean*, 951 F.2d at 1214-15 (observing that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit" but under Fed. R. Civ. P. 17(b) "'capacity to sue or be sued shall be determined by the law of the state in which the district court is held'" and, therefore, reference to the forum state's law was necessary to resolve the issue).

Third, Defendants argue that "[s]heriff's departments, standing alone, are generally not considered 'persons' for purposes of Section 1983 liability." (Memo. at 4:13-14.) Again, Defendants' argument is plainly wrong where the U.S. Supreme Court has *explicitly* held that "municipalities and other local government units" are subject to liability as "persons" under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."); *see also Lee v. N. Nev. Adult Mental Health Servs.*, 2007 U.S. Dist. LEXIS 64028, at *3-5 (D. Nev. Aug. 28, 2007); *Harris v. County of Sacramento*, 2018 U.S. Dist. LEXIS 133935, at *6-7 (E.D. Cal. Aug. 7, 2018) (same). In any event, again, Defendants' argument is irrelevant, where "[t]he question here is not whether [a] [] [s]heriff's [d]epartment is a 'person' for the purposes of liability under *Monell* and [42 U.S.C. §] 1983, but whether [a] [d]epartment is a legal entity subject to suit" under the forum state's law. *Dean*, 951 F.2d at 1214.

Fourth, Defendants argue that naming a sheriff's department "is a redundant means of pleading an action against [a] [county]." (Memo. at 4:21-23.) Not so.[5] "Ninth Circuit case law also confirms that Section 1983 actions can proceed against both a public entity (here the County of [Stanislaus]) and its local law enforcement agency (the [Stanislaus] County Sheriff's Department) simultaneously." *Harris*, 2018 U.S. Dist. LEXIS 133935, at *7. *See Shaw*, 788 F.2d 600 (City of San Jose and San Jose Police

---

[5] There exist practical reasons for naming both entities, including determination of which entity/official possessed final policymaking authority over the conduct at issue. *See, e.g., Barone v. City of Springfield*, 902 F.3d 1091, 1106-09 (9th Cir. 2018).

Department); *Karim-Panahi*, 839 F.2d 621 (City of Los Angeles <u>and</u> Los Angeles Police Department); *Streit*, 236 F.3d 552 (County of Los Angeles <u>and</u> Los Angeles County Sheriff's Department). Further, California district courts have reached the same conclusion that a plaintiff may sue "both," simultaneously. *See*, *e.g.*, *Rodgers v. City of Pasadena*, 2016 U.S. Dist. LEXIS 173019, at *5-7 (C.D. Cal. Dec. 12, 2016); *Martinez v. City of Colton*, 2016 U.S. Dist. LEXIS 117787, at *54-55 (C.D. Cal. Aug. 30, 2016); *Monday v. McDonnell*, 2015 U.S. Dist. LEXIS 170913, at *17 (C.D. Cal. Dec. 18, 2015); *Butler v. Riverside County*, 2015 U.S. Dist. LEXIS 53061, at *9 (C.D. Cal. Apr. 22, 2015); *Derritt v. City of Pomona*, 2014 U.S. Dist. LEXIS 108645, at *3 n.1 (C.D. Cal. May 23, 2014); *San Joaquin Deputy Sheriffs' Ass'n v. County of San Joaquin*, 898 F. Supp. 2d 1177, 1183-84 (E.D. Cal. 2012).

Therefore, Defendants' motion to dismiss Defendant Stanislaus County Sheriff's Department as a party to this action must be denied.

## B.   FIRST CLAIM: UNREASONABLE FORCE (FOURTH AMENDMENT)

Plaintiff Estate of Alejandro Sanchez ("Estate") has alleged Fourth Amendment claims against all Defendants to this action. (Compl., ¶29.)[6]

The Fourth Amendment of the U.S. Constitution guarantees citizens the right "to be secure in their persons … against unreasonable … seizures," including use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Tolan v. Cotton*, 572 U.S. 650, ___, 134 S. Ct. 1861, 1865 (2014) ("When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."). "[T]he Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996); *see also Smith v. City of Hemet*, 394 F.3d 689, 700-01 (9th Cir. 2005).

---

[6] Plaintiff Estate's claims are styled as implicating the "Fourth and Fourteenth Amendments to the U.S. Constitution" because "the Fourteenth Amendment is the conduit for Fourth Amendment protections against a State." *See Neylon v. County of Inyo*, 2016 U.S. Dist. LEXIS 161326, at *22 (E.D. Cal. Nov. 18, 2016) (citing *Holcomb v. Ramar*, 2013 U.S. Dist. LEXIS 157833, at *9 (E.D. Cal. Nov. 1, 2013), and *Lee v. City of Chicago*, 330 F.3d 456, 460 n.1 (7th Cir. 2003) ("[T]he [Fourth] [A]mendment does not apply to the [municipality]'s actions directly, but rather *vis-a-vis* its incorporation through the due process clause of the Fourteenth Amendment.")).

6

## 1. Entity Defendants

Plaintiff Estate has alleged that Defendants County of Stanislaus and Stanislaus County Sheriff's Department (collectively, "Entity Defendants") are responsible for violating Alejandro Sanchez's Fourth Amendment rights. (Compl., ¶32.)

A municipality may be directly liable under 42 U.S.C. § 1983 when the municipality inflicts an injury. *See Monell*, 436 U.S. at 694.

> A local government is liable for an injury under § 1983 under three possible theories. First, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury. Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [local government] can reasonably be said to have been deliberately indifferent to the need. Third, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (internal citations, quotations & alterations omitted). Here, Plaintiff Estate has alleged the existence of inadequate policies or customs concerning the use of excessive and unreasonable force against persons coming into contact with Entity Defendants' personnel, as reflected by the death of Alejandro Sanchez in this case and numerous documented and alleged uses of unreasonable force by Entity Defendants' personnel in other cases. (Compl., ¶¶23-28.)

First, Defendants argue that Plaintiff Estate "fails to identify a single [] policy that supposedly caused the physical confrontation with decedent." (Memo. at 5:15-16.) Plaintiff Estate is not required to plead the existence of a policy or custom that "caused ['Doe' Defendants'] physical confrontation with [Alejandro Sanchez]"—rather, Plaintiff Estate need only plausibly allege that the "identified deficiency" in a policy or custom is "closely related to the ultimate injury." *See Gibson v. County of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075-76 (9th Cir. 2016). Plaintiff Estate alleges the existence of inadequate policies or customs that allegedly contributed to use of excessive force against persons contacted by Entity Defendants' personnel. (Compl., ¶¶23-28.)

Second, Defendants argue that Plaintiff Estate's allegations are insufficiently pled because they

7

only identify a policy or custom but fail to "'describ[e] in detail'" the policy or custom. (Memo. at 5:18-21 (quoting *Johnson v. Cate*, 2012 U.S. Dist. LEXIS 44168, at \*8 (E.D. Cal. Mar. 29, 2012)).) However, "'only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.'" *Halcomb v. City of Sacramento*, 2016 U.S. Dist. LEXIS 81490, at \*10 (E.D. Cal. June 20, 2016) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011)). Generally, a "relaxed pleading standard" for pre-discovery municipal liability claims applies, and even allegations made "on information and belief" are permitted. *See*, *e.g.*, *A.C. v. Griego*, 2016 U.S. Dist. LEXIS 141508, at \*10-11 (E.D. Cal. Oct. 11, 2016); *Estate of Duran v. Chavez*, 2015 U.S. Dist. LEXIS 163863, at \*29 (E.D. Cal. Dec. 4, 2015); *Phillips v. County of Fresno*, 2013 U.S. Dist. LEXIS 170511, at \*29-30 (E.D. Cal. Dec. 2, 2013).

Third, Defendants argue that any connection between the instant action and Plaintiff Estate's allegations related to other pending lawsuits and litigation against Entity Defendants (Compl., ¶26) is "entirely speculative" and that such other "incidents, complaints, and settlements" are "nothing more than random acts…" (Memo. at 5:22-6:16.) However, those allegations are sufficient to give rise to a plausible claim of municipal liability. *See*, *e.g.*, *Galindez v. Miller*, 285 F. Supp. 2d 190, 198-99 (D. Conn. 2003); *Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909, at \*26 (N.D. Cal. Oct. 30, 2018) ("settlements can be used to show knowledge with respect to *Monell* liability"). "[O]ther civil rights actions … that are either currently pending or have been settled, all involving allegations of the excessive use of force," support an inference of action pursuant to policy or custom. *See Creer v. City of Vallejo*, 2015 U.S. Dist. LEXIS 78714, at \*11-18 (E.D. Cal. June 16, 2015). "[I]t is sufficient under [Ninth Circuit] case law to prove a 'custom' of encouraging excessive force to provide evidence that personnel have been permitted to use force with impunity." *Rodriguez*, 891 F.3d at 803 (collecting cases).

### 2. Sheriff Christianson

Plaintiff Estate has alleged that Defendant Adam Christianson ("Christianson") is responsible for violating Alejandro Sanchez's Fourth Amendment rights. (Compl., ¶32.)

A supervisor may be liable under 42 U.S.C. § 1983 in an individual capacity if there exists either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

8

connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez*, 891 F.3d at 798 (internal quotations & citations omitted). "A sufficient causal connection between a supervisor's conduct and a constitutional violation can be shown by: (1) the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, that the supervisor knew or reasonably should know will cause others to inflict a constitutional injury; (2) the supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates; (3) the supervisor's acquiescence in or ratification/condoning of the constitutional deprivation; or (4) conduct by the supervisor that showed a reckless or callous indifference to the rights of others." *Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1129 (E.D. Cal. 2015).

Plaintiff Estate has not alleged that Defendant Christianson was at the scene when Alejandro Sanchez was killed (Compl., ¶¶14-22) and, therefore, the claims against him do not involve his direct and personal participation, in a contemporaneous sense. However, a supervisor's "direct personal participation in the deprivation," *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978), or "physically presen[ce] when the injury occurred," *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), is not required, where "[a] supervisor will rarely be directly and personally involved in the same way as are the individual [employees] who are on the scene inflicting [] injury," *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Defendant Christianson's position as sheriff means that his individual liability "oftentimes overlaps" with that of his office. *See Larez*, 946 F.2d at 645; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008); *see also Smith v. City of Stockton*, 2018 U.S. Dist. LEXIS 136656, at *27-28 (E.D. Cal. Aug. 10, 2018) ("A police chief's supervisory function can blur his liability based on official contrasted to individual capacity, the proof of which often overlaps."); *Chapman v. Jarrell*, 2005 U.S. Dist. LEXIS 31132, at *24 n.6 (S.D. W. Va. Nov. 16, 2005) (evidence necessary to establish supervisory and municipal liability claims "practically will be the same").

Defendants argue that Plaintiff Estate has failed to allege facts "showing that [Defendant Christianson] can be held liable as a supervisor-defendant" because allegations that he knew or should have known of the inadequate training, supervision, or discipline of his subordinates are "not enough." (Memo. at 7:11-23.) However, Plaintiff Estate has alleged that Defendant Christianson should have been aware of the inadequate nature of his policies or customs concerning the use of excessive and

9

unreasonable force against persons contacted by personnel under his command based on: (i) "[m]ultiple jury verdicts and/or judgments"; (ii) "[m]ultiple settlements paid"; and (iii) "[p]rior incidents, complaints, and/or pending litigation" against his department and personnel. (Compl., ¶26.) Allegations of "numerous incidents" and "systematic problems" involving personnel under a sheriff's command are sufficient to state a claim for supervisory liability. *See Starr*, 652 F.3d at 1216; *see also Shadd v. County of Sacramento*, 2014 U.S. Dist. LEXIS 26143, at *13-15 (E.D. Cal. Feb. 26, 2014) (allegations of "pervasive culture of violence" coupled with alleged exemplary incidents sufficient to state supervisory liability claims). Specifically, where a supervisor "knowingly participated in creating and maintaining a culture of impunity for officers' use of unconstitutionally excessive force . . . [a] jury could [] reasonably conclude that [the supervisor]'s 'inaction in the training, supervision, or control of his subordinates' provided a basis for supervisory liability." *Rodriguez*, 891 F.3d at 799 (quoting *Starr*, 652 F.3d at 1208).

Therefore, Defendants' motion to dismiss Plaintiff Estate's Fourth Amendment claims must be denied.

## C.     THIRD CLAIM: RIGHT OF ASSOCIATION (FIRST AMENDMENT)

Plaintiffs Irene Mamourieh, Cristina Girardi, and Marina Sanchez (collectively, "Siblings") have alleged First Amendment claims against "Doe" Defendants to this action. (Compl., ¶40.)[7]

"The First Amendment, while not expressly containing a 'right of association,'" *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995), nonetheless, "protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Bd. of Dirs. v. Rotary Club*, 481 U.S. 537, 545 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)). Accordingly, "[t]he Ninth Circuit has recognized a First Amendment familial association claim," *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017), where a state actor's "actions and policies constitute an 'unwarranted interference' with [a person's] right to familial association…" *Lee v. City of Los Angeles*, 250 F.3d 668,

---

[7] Plaintiff Siblings' claims are styled as implicating the "First and Fourteenth Amendments to the U.S. Constitution" because the Fourteenth Amendment is the conduit for First Amendment protections against a State. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947); *Menotti v. City of Seattle*, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005); *see, generally, Neylon*, 2016 U.S. Dist. LEXIS 161326, at *22.

685-86 (9th Cir. 2001); *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018); *see also Roberts*, 468 U.S. at 618 ("[W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association … may be implicated.").

### 1. Cognizable Legal Theory

Defendants argue that Plaintiff Siblings "claim they have a liberty interest as sisters" of Alejandro Sanchez but "cannot claim [such] liberty interests under the Fourteenth Amendment." (Memo. at 8:17-23.) Defendants' argument is a misrepresentation; <u>nowhere</u> have Plaintiff Siblings alleged Fourteenth Amendment claims based on any "liberty interest."[8] Plaintiff Siblings have not alleged Fourteenth Amendment claims because Ninth Circuit authority precludes them from doing so. *See Ward v. City of San Jose*, 967 F.2d 280, 283-84 (9th Cir. 1992) ("Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children.").[9]

The claim that Plaintiff Siblings *have* alleged is a First Amendment claim based on unwarranted interference with rights of association. (Compl., ¶¶40-44.) The fact that Plaintiff Siblings are foreclosed by *Ward* from bringing <u>Fourteenth</u> Amendment claims says absolutely nothing concerning the validity of their alleged <u>First</u> Amendment claims. *See J.P. v. County of Alameda*, 2018 U.S. Dist. LEXIS 69945, at *16 (N.D. Cal. Apr. 24, 2018) ("The County Defendants have not shown that the principle enunciated in *Ward* limits the 'familial association' right previously articulated under the First Amendment."); *Kaur v. City of Lodi*, 2014 U.S. Dist. LEXIS 109294, at *18 (E.D. Cal. Aug. 6, 2014) ("Officer Defendants have not shown that the principle enunciated in *Ward* extends to Plaintiffs' First Amendment claims."); *Graham v. County of Los Angeles*, 2011 U.S. Dist. LEXIS 95469, at *3-6 (C.D. Cal. Aug. 25, 2011) (fiancé of decedent did "not bring a 14th Amendment companionship claim" in light of *Ward* but her relationship with decedent "was sufficiently personal and intimate to merit the protection of the First Amendment").

---

[8] Defendants cite paragraphs seven through nine of the complaint as the source for their argument that Plaintiff Siblings "claim they have a liberty interest as sisters to decedent." (Memo. at 8:17-18.) However, those paragraphs contain no such claims. (*See* Compl., ¶¶7-9.)

[9] The Second Claim, a Fourteenth Amendment claim by Plaintiff Bertha Sanchez (Compl., ¶¶35-39), Alejandro Sanchez's mother, is unchallenged by the instant motion. *See Lee*, 250 F.3d at 685; *Ward*, 967 F.2d at 283 ("'[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child.'" (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985)).

11

A sibling's First Amendment rights of association are violated when state action constitutes "unwarranted interference," *Lee*, 250 F.3d at 685-86, with the relationship. *See, e.g.*, *Kaur*, 263 F. Supp. 3d at 973-75 (denying summary judgment where law enforcement officers allegedly used unreasonable force to kill plaintiff siblings' brother); *Mann v. City of Sacramento*, 2017 U.S. Dist. LEXIS 152383, at *1-3 (E.D. Cal. Sep. 19, 2017) (denying motion to dismiss where law enforcement officers allegedly used unreasonable force to kill plaintiff siblings' brother);[10] *J.P.*, 2018 U.S. Dist. LEXIS 69945, at *14-20 (denying motion to dismiss and for qualified immunity where county social workers allegedly placed plaintiff sibling's sister in dangerous foster custody circumstances resulting in her death).

### 2.   Sufficient Factual Allegations

The "juxtaposition" of factual pleading standards announced by U.S. Supreme Court decisions is "perplexing." *Starr*, 652 F.3d at 1215. But at least two principles are clear:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id*. at 1216.

Defendants argue that "[Plaintiff Siblings] failed to plead sufficient facts regarding their expressive and/or intimate relationships with [Alejandro Sanchez]." (Memo. at 8:24-9:5.) Specifically, Defendants argue that Plaintiff Siblings' allegations that they shared a "close relationship and special bond" with Alejandro Sanchez that "presupposed deep attachments, commitments, and distinctively personal aspects of their lives" (Compl., ¶¶7-9) are "conclusory" and "simply not enough" because they does not contain "specific facts about the 'objective characteristics' that each sibling had with decedent

---

[10] The *Mann* decision was recently reversed by the Ninth Circuit on the basis of qualified immunity in an unpublished memorandum disposition. *See Mann v. City of Sacramento*, 2018 U.S. App. LEXIS 25462 (9th Cir. Sep. 7, 2018). "Unpublished dispositions and orders of [the Ninth Circuit] are not precedent…" 9th Cir. R. 36-3(a). Further, that opinion's discussion with respect to the constitutional question is vague and unsupported by any coherent analysis, rendering it particularly unhelpful. *See Mann*, 2018 U.S. App. LEXIS 25462, at *5-6. *See also Hart v. Massanari*, 266 F.3d 1155, 1177-78 (9th Cir. 2001) ("[T]he disposition is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases.").

to show that their relationships 'warrant constitutional protection.'" (Memo. at 8:26-9:5 (quoting *Mann*, 2018 U.S. App. LEXIS 25462, at *5).) Defendants' argument fails to appreciate the distinction between "legal conclusions" and "facts." *See*, *e.g.*, *Chavez v. Astrue*, 2012 U.S. Dist. LEXIS 85806, at *6-7 (E.D. Cal. June 19, 2012) ("A legal conclusion is a statement such as, 'There is not substantial evidence in the record to support the legal conclusion that Plaintiff was not disabled within the meaning of the Act.' Facts include such allegations as 'Plaintiff worked as an auto mechanic until June 1, 1990,' and 'Plaintiff was fired from her job when she became unable to grasp her tools.'"); *Brown v. Fresno Unified Sch. Dist.*, 2012 U.S. Dist. LEXIS 156251, at *10 (E.D. Cal. Oct. 30, 2012) ("A legal conclusion is a statement such as: 'The defendant has breached EEOC laws.' . . . A fact is a statement such as: 'Employer advertised a supervisory job in March 1980'; 'Plaintiff was diagnosed with multiple sclerosis in August 1991'; or 'Plaintiff requires headphones to hear the telephone.'"). Defendants' argument is that Plaintiff Siblings' allegations are legal conclusions and that they are not facts.

Plaintiff Siblings' allegations "borrow" or "echo" the same language used in *Rotary Club*, 481 U.S. at 545 (Compl., ¶¶7-9), but that does not "necessarily" render them "legal conclusions." *See*, *e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Hunt*, 2016 U.S. Dist. LEXIS 22653, at *11 (E.D. Cal. Feb. 23, 2016); *Vaccaro v. CVS Pharmacy, Inc.*, 2013 U.S. Dist. LEXIS 99991, at *4-6 (S.D. Cal. July 16, 2013) ("It does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions. Factual allegations do not cease to be factual even if they quote a statute's language."). Plaintiff Siblings' allegations that they shared a "close relationship and special bond" with their brother, Alejandro Sanchez, that "presupposed deep attachments, commitments, and distinctively personal aspects of their lives" (Compl., ¶¶7-9) are enough to "plausibly suggest an entitlement to relief." *See Starr*, 652 F.3d at 1216. If Defendants doubt the extent of the *factual* relationships alleged, they are free to explore those allegations in discovery—but they are not free to challenge the alleged relationships *as a matter of law*. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1057 ("[S]kepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds.").

Therefore, Defendants' motion to dismiss Plaintiff Siblings' First Amendment claims must be denied. Even if Plaintiff Siblings failed to allege sufficient factual allegations regarding their relationships with their brother, Alejandro Sanchez, this Court "should grant leave to amend …, unless it

13

determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## D. FOURTH CLAIM: UNREASONABLE FORCE (CAL. CONST. ART. I, § 13)

Plaintiff Estate has alleged Cal. Const. art. I, § 13 claims against all Defendants to this action. (Compl., ¶45.)

Article I, section 13 of the California Constitution guarantees "[t]he right of the people to be secure in their persons … against unreasonable seizures…" As the language indicates, art I, § 13 "parallels" protections afforded by the Fourth Amendment of the U.S. Constitution. *See Sanchez v. County of San Diego*, 464 F.3d 916, 929 (9th Cir. 2006).

### 1. Right of Action

A state's highest court is "the final arbiter of what is state law." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017). "The California Supreme Court has [] not decided whether there is a private cause of action for damages under article I, section 13, which protects against unreasonable searches and seizures, and federal courts are divided on this question." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (Cal. Ct. App. 2017). Nonetheless, "federal courts are not precluded from affording relief…" *Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875, 879 (9th Cir. 1987).

> [I]t is appropriate to employ the following framework for determining the existence of a damages action to remedy an asserted constitutional violation [under the California Constitution]. First, [a court] shall inquire whether there is evidence from which [the court] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation. . . Second, if no affirmative intent either to authorize or to withhold a damages remedy is found, [a court] shall undertake the "constitutional tort" analysis adopted by *Bivens* [*v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971),] and its progeny.

*Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300, 317 (Cal. 2002).

Defendants argue that this claim must be dismissed because "[district] [c]ourts have generally recognized that [art. I, § 13] does not provide a private cause of action for damages." (Memo. at 9:12-20 (string-citing district court decisions).) Defendants' argument fails because it does not attempt to conduct the requisite two-part *Katzberg* analysis or to explain any decision that *has* conducted the analysis. *See, e.g.*, *Espinosa v. City & County of San Francisco*, 2011 U.S. Dist. LEXIS 100291, at *13 (N.D. Cal. Sep. 7, 2011) (issue was "not adequately briefed" where the "analytical framework adopted in *Katzberg*" was

14

not addressed); *Hurtado v. County of Sacramento*, 2014 U.S. Dist. LEXIS 115649, at *9-10 (E.D. Cal. Aug. 19, 2014) (the parties did not "undertaken the *Katzberg* analysis" and only cited to "cases that d[id] not control th[e] court's resolution"); *Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, at *14 (N.D. Cal. Aug. 24, 2018) ("[T]he analysis under *Katzberg* is a complicated issue. Defendants have not done it justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form."). This Court cannot "manufacture arguments" on behalf of Defendants that they did not raise. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *Shellabarger v. Hale*, 2018 U.S. Dist. LEXIS 147573, at *36-37 (E.D. Cal. Aug. 28, 2018) (a district court judge has a "limited and neutral role in the adversarial process" and cannot "make a party's case for it"). Defendants motion to dismiss the art. I, § 13 claims should be rejected as inadequately supported because, "under [Fed. R. Civ. P.] 12(b)(6), the defendant has the burden of showing that no claim has been stated." *See Kehr Packages, Inc. v. Fidelcor*, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).[11]

### a.   *Affirmative Intent To Authorize A Damages Action To Remedy Violations*

"In undertaking [the first] inquiry [a court] shall consider the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." *Katzberg*, 29 Cal. 4th at 317. On its face, art. I, § 13 provides no clearly stated intent to authorize a damages remedy. *See* Cal. Const., art. I, § 13. "Accordingly, [a court] must look further in [] attempt to discern whether article I, section [13] was intended to include a damages remedy." *Katzberg*, 29 Cal. 4th at 318.

"In considering evidence of an implied right to seek damages, … it [is] appropriate to examine, as have sister state jurisdictions that have permitted damage suits to remedy search and seizure violations, common law history from which [a court] might infer, within the provision at issue, an intent to provide an action for damages to remedy a violation of that provision." *Id.* at 322 & 310 n.9.

---

[11] Defendants cannot save a deficient argument by asserting it for the first time in reply. *See*, *e.g.*, *Fredrick v. United States*, 163 F.2d 536, 549 (9th Cir. 1947) ("New material does not belong in a reply brief."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Ass'n of Irritated Residents v. C&R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).

For example, in recognizing a right to damages to remedy a violation of the state search and seizure and equal protection provisions, [in *Brown v. State*, 89 N.Y.2d 172, 188 (N.Y. 1996),] the New York Court of Appeals observed that "the courts have looked to the common-law antecedents of the constitutional provision to discover whether a damage remedy may be implied. New York's first Constitution in 1777 recognized and adopted the existing common law of England and each succeeding Constitution has continued that practice. Thus, in some cases, there exist grounds for implying a damage remedy based upon preexisting common-law duties and rights."

The court in *Brown* found such grounds for implying a right of action. First, the court observed, "[t]he prohibition against unlawful searches and seizures originated in the Magna Carta and has been part of our statutory law since 1828. The civil cause of action was fully developed in England and provided a damage remedy for the victims of unlawful searches at common law (*see, Huckle v. Money*, 2 Wils. 205, 95 Eng. Rep. 768 [1763]; *Wilkes v. Wood*, Lofft 1, 98 Eng. Rep. 489 [1763]; *Entick v. Carrington*, 19 State Tr. 1029, [1558-1774] All ER Rep. 41 [1765])." Second, the court in *Brown* observed that this English common law rule had been endorsed and accepted by the New York court and by the drafters of the most recent state constitution, and hence found historical support for an implied remedy in damages.

*Id.* at 322-23 (quoting *Brown*, 89 N.Y.2d at 188) (internal citations omitted). "Similar reasoning supporting an action for damages to remedy a search and seizure violation has been embraced by the high courts of Maryland and Louisiana." *Id.* at 323 n.21 & n.22 (citing *Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921, 925 (Md. 1984), and *Moresi v. State*, 567 So.2d 1081, 1092 (La. 1990)).

The *Katzberg* decision's extensive recognition of implied damages actions arising from the New York, Maryland, and Louisiana constitutions, while *dicta*, is highly suggestive of how the California Supreme Court would decide this issue with regard to art. I, § 13. *See, e.g., Garcia v. County of Riverside*, No. 5:13-cv-00616-JGB-SP, ECF No. 99 at 6 (C.D. Cal. April 28, 2017) ("[T]he discussion in *Katzberg* addressing the rights flowing to a victim of an illegal search and seizure provides a strong predictor as to how the California Supreme Court would decide this issue: namely, by inferring a right to damages based on the provision's derivation from English common law."); *OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822, at *20 (C.D. Cal. Oct. 7, 2014) ("[A]s the *Katzberg* court noted, the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures."); *Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386, at *20 (C.D. Cal. Aug. 27, 2008) ("[F]urther analysis of *Katzberg* demonstrates the California Supreme Court's implied recognition of a damages claim under Article I, § 13."); *Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252, at *115-16 (C.D. Cal. Mar. 15, 2007) ("[T]he *Katzberg* court … indicat[ed] that [the plaintiff]

16

would have found a damages remedy under Article I, § 13."); *Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213, at *21 (C.D. Cal. May 15, 2006) ("[T]he California Supreme Court's implied endorsement of a damages action for a violation of the prohibition against unlawful searches and seizures in *Katzberg* leads the Court to believe that the California Supreme Court would permit such an action.").

In addition to the *dicta* found in *Katzberg*, 29 Cal. 4th at 322-23, there is further California-specific historical background supporting a damages action based on violations of art. I, § 13.

> The California Constitution, like the New York Constitution, appears to have been drafted against a background expectation that common law remedies would continue to be available. Indeed, shortly after the adoption of the Constitution, California affirmed by statute that "[t]he Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all the Courts of this State." Cal. Stats. 1850, ch. 95 [currently codified, with small changes, at Cal. Civ. Code § 22.2]. And as the *Katzberg* court noted, the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures. [29 Cal. 4th at 322.] Thus it seems quite likely that the framers of the California Constitution expected and intended that violations of § 13 would have had a common law tort remedy.

*OSJ Pep Tenn. LLC*, 2014 U.S. Dist. LEXIS 142822, at *20.

### b. Constitutional Tort Analysis

If a court is unable to determine that a provision of the California Constitution provides an "affirmative intent" to permit a damages act, "[that] determination … does not end [the] inquiry." *Katzberg*, 29 Cal. 4th at 324. In undertaking the second step of the inquiry,

> [a]mong the relevant factors in this analysis are whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision. If [a court] find[s] that these factors militate against recognizing the constitutional tort, [the] inquiry ends. If, however, [a court] find that these factors favor recognizing a constitutional tort, [the court] also shall consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages.

*Id.* at 317.

### i.   Adequacy of Alternative Remedies

A court shall "first consider the adequacy of existing remedies." *Katzberg*, 29 Cal. 4th at 325.

In *Katzberg*, the plaintiff sought to obtain monetary damages based on alleged procedural due

17

process violations pursuant to the due process clause of Cal. Const. art. I, § 7(a) and the court concluded that other, more expeditiously-available state law remedies were available to the plaintiff. *Id*. at 326-37. Because the "plaintiff had an adequate remedy," "[t]he availability of these adequate alternative remedies militate[d] against judicial creation of a tort cause of action for damages in th[at] circumstance[] presented." *Id*. at 327; *see also Degrassi v. Cook*, 29 Cal. 4th 333, 342-43 (Cal. 2002) (holding that "meaningful alternative remedies" were available to plaintiff alleging violations of the free speech clause, Cal. Const. art. I, § 2(a)). Notably, the California Supreme Court did not consider the availability of federal remedies when analyzing the adequacy of existing remedies. *Id*. at 327 n.29 ("[W]e need not and do not determine what role the availability of a federal law remedy (for example, under 42 U.S.C., § 1983) should play in the determination whether a state action for damages should be recognized for violation of a state constitutional provision."). Instead, the court focused on the fact that a "name-clearing hearing" was available to the plaintiff pursuant to a "writ of mandate" under California law, prior to filing the suit. *Id*. at 326 & n.27 (noting the potential availability of damages).

This case is distinguishable from *Katzberg*, where it does not involve procedural due process and, therefore, the "adequate alternative remedies" available to the plaintiff in that case are simply not available in the instant action—under federal or state law. Under California law, unlike *Katzberg*, no adequate alternative remedy is available in this case. Arguably (although not argued by Defendants), common law assault/battery or negligence claims are available as a remedy for injuries similar to those alleged herein. However, California law affords public entities and employees a plethora of immunities to common law and statutory liability. *See* Cal. Gov. Code § 815 *et seq*. (public entity immunities); Cal. Gov. Code § 820 *et seq*. (public employee immunities). But those immunities do not afford protection against a constitutional claim where, "if [a state law statutory immunity] conflict[s] with [the] California Constitution['s provisions], the statute would have to yield to the Constitution." *See Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961 (Cal. 2007).

Similarly, while it is undecided whether California courts consider federal claims in the context of an adequate alternative remedy, *see Katzberg*, 29 Cal. 4th at 327 n.29, even if they did, 42 U.S.C. § 1983 claims are not an adequate alternative remedy where federal law does not permit *respondeat superior* liability of entities, *see Monell*, 436 U.S. at 691, and affords the incredibly expansive affirmative defense

18

of qualified immunity to individuals against damages claims, *see Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982), unlike California law. *See* Cal. Gov. Code § 815.2(a) (imposing *respondeat superior* liability under state law); *see also Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1243 (Cal. Ct. App. 2007) ("'The doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees.'" (quoting *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 460 (Cal. Ct. App. 2002)); *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 790 & n.18 (Cal. Ct. App. 2017) (refusing to "import[] federal qualified immunity into California law."); *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1083 (9th Cir. 2018) ("We decline to apply a doctrine that has evolved in the narrow and unique context of [42 U.S.C.] § 1983 claims in a way that would undermine state law that expressly departs from the federal standard concerning qualified immunity.").

Therefore, redressing the alleged injuries based on common law claims under state law or federal law—as opposed to a state constitutional rights damages action—does not afford an "equally effective remedy for constitutional violations." *See Carlson v. Green*, 446 U.S. 14, 19 (1980); *see also Katzberg*, 29 Cal. 4th at 308-09 (discussing the U.S. Supreme Court's apparently changing views, from expansive to more restrictive, on the adequacy and effectiveness of a remedy under the *Bivens* framework).

           ii.      Changes to Established Tort Law

A court shall "next consider the extent to which a constitutional tort action would change established tort law." *Katzberg*, 29 Cal. 4th at 327.

> [T]he California Constitution is, and always has been, a document of independent force, and [] the rights embodied in and protected by the state Constitution are not invariably identical to the rights contained in the federal Constitution. California cases long have recognized the independence of the California Constitution, and article I, section 24, of the California Constitution expressly confirms that the rights "guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 325-26 (Cal. 1997) (internal quotations & citations omitted). Accordingly, the California Constitution should be interpreted as affording "rights [which] extend equal or greater protection to those guaranteed by the federal Constitution." *Duffy v. Cal. State Pers. Bd.*, 232 Cal. App. 3d 1, 9 (Cal. Ct. App. 1991); *see also Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980) (States may grant "individual liberties more expansive than those conferred by the Federal Constitution…"); Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv.

19

L. Rev. 489, 491 (1977) ("[S]tate courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law."); *Schmid v. City of Petaluma*, 2012 U.S. Dist. LEXIS 14141, at *4-5 (N.D. Cal. Feb. 6, 2012) (providing examples where state constitutional rights exceeded those of federal counterparts).

Accordingly, an interpretation of the California Constitution that afforded anything *less than* that which is available under the U.S. Constitution would be inconsistent with California law. *See People v. Brisendine*, 13 Cal. 3d 528, 551 (Cal. 1975) ("California citizens are entitled to greater protection under the California Constitution against unreasonable searches and seizures than that required by the United States Constitution…"). Therefore, because the allegations supporting the art. I, § 13 claims are cognizable as violations of the Fourth Amendment of the U.S. Constitution, it should follow that they are subject to "equal or greater protection," *Duffy*, 232 Cal. App. 3d at 9, under the California Constitution and, as a result, do not represent any "change [in] established tort law," *Katzberg*, 29 Cal. 4th at 327.

### iii.   Nature and Significance of Constitutional Provision

A court shall "also consider the nature of the provision and the significance of the purpose that it seeks to effectuate." *Katzberg*, 29 Cal. 4th at 328.

The California Supreme Court has characterized the rights protected by art. I, § 13 as "vitally important," *In re William G.*, 40 Cal. 3d 550, 563 (Cal. 1985), and has been "emphatically clear that important as efficient law enforcement may be, it is more important that the right of privacy guaranteed by [the Fourth Amendment and art. I, § 13] be respected," *People v. Cahan*, 44 Cal. 2d 434, 438 (Cal. 1955) (addressing former art. I, § 19—current art. I, § 13).

### iv.   Special Factors

At this point in the analysis, if a court concludes "that the considerations discussed above favor[] recognition of a constitutional tort," the court shall "also consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." *Katzberg*, 29 Cal. 4th at 329 (fns. omitted). None of the special factors counsel hesitation in recognizing a damages action. Defendants

20

have not argued otherwise.

### 2.   Entity Defendants

Plaintiff Estate has alleged art. I, § 13 claims against Entity Defendants on the basis of direct liability (Compl., ¶48) and indirect/vicarious liability (Compl., ¶49).

First, Defendants argue that Plaintiff Estate cannot allege these claims against Entity Defendants "either as direct liability or indirect [liability]." (Memo. at 11:8.) Defendants are wrong in both respects. As to Entity Defendants' direct liability, under Cal. Gov. Code § 815, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care," *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (Cal. 2003), "<u>except for such liability as may be required by the state or federal constitution</u>," Cal. Gov. Code § 815, Legislative Committee Comments (emphasis added). *See Fenton v. Groveland Cmty. Servs. Dist.*, 135 Cal. App. 3d 797, 803-04 (Cal. Ct. App. 1982), *disapproved, in part, on other grounds by Katzberg*, 29 Cal. 4th at 328 n.30. In other words, "the [California] Constitution may provide a cause of action independent from any statute providing for liability." *Fenton*, 135 Cal. App. 3d at 804.[12] As to Entity Defendants' indirect/ vicarious liability, "California … imposes liability on [public entities] under the doctrine of *respondeat superior* for acts of [public] employees…" *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (citing Cal. Gov. Code § 815.2).

Second, Defendants argue that "California does not recognize the tort [of inadequate supervision, training, or discipline]…" (Memo. at 11:6-8.) But Plaintiff Estate has not alleged "the tort of inadequate supervision, training, or discipline." As to direct liability, Plaintiff Estate has alleged that Alejandro Sanchez's art. I, § 13 rights were violated when Entity Defendants "inadequately trained, supervised, or disciplined" their personnel due to the "lack of proper training, pursuant to policy, or the result of the

---

[12] The *Katzberg* decision's disapproval of the *Fenton* decision was not related to its interpretation of Cal. Gov. Code § 815 but, rather, was limited to "the methodology employed" where "the court in *Fenton* did not consider whether [the California] Constitution's right-to-vote provision was *intended* to afford [a damages] remedy." 29 Cal. 4th at 313 & 328 n.30. Specifically, the California Supreme Court "express[ed] no view on the correctness of the results reached in [*Fenton*]" but, rather, "disapprove[d]" of that decision's failure sufficiently to analyze the damages remedy issue. *Id.* at 328 n.30. As a result, the *Fenton* decision's holding the California Constitution may provide a cause of action against public entities independent from any statute providing for liability remains valid.

lack of policy concerning the use of excessive and unreasonable force against persons contacted" (Compl., ¶48), among other allegations (Compl., ¶¶23-28 & 46). Under this direct liability theory, Entity Defendants are liable to the same extent as "under *Monell*." *See Garcia v. County of Fresno*, 2005 U.S. Dist. LEXIS 31624, at *16-17 (E.D. Cal. Nov. 21, 2005) (denying motion to dismiss claims based on allegations that public entity "caused the decedent's death by failing to train the [o]fficers in the appropriate use of force, a failure which the Plaintiffs claim resulted from a 'policy or custom.'"). As to indirect/vicarious liability, Plaintiff Estate alleges that Alejandro Sanchez's art. I, § 13 rights were violated when "Doe" Defendants used unreasonable force (Compl., ¶47)[13] and Defendant Christianson acted deliberately indifferent as a supervisor (Compl., ¶48). Entity Defendants are indirectly/vicariously liable under the *respondeat superior* doctrine. *See Robinson*, 278 F.3d at 1016.

### 3.   Sheriff Christianson

Plaintiff Estate has alleged art. I, § 13 claims against Defendant Christianson on the basis of direct liability. (Compl., ¶48.) Defendants argue that Defendant Christianson is immune from Plaintiff Estate's art. I, § 13 claims under Cal. Gov. Code § 820.8. (Memo. at 9:24-10:6.) Cal. Gov. Code § 820.8 provides that: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

"[Cal. Gov. Code] § 820.8 is inapplicable [where plaintiffs] rely on the supervisors' culpable action or inaction that proximately caused their injuries." *Rodriguez*, 891 F.3d at 799. Defendants' argument demonstrates a failure to comprehend the allegations supporting Plaintiff Estate's art. I, § 13 claims, where Defendant Christianson is <u>not</u> alleged to be vicariously liable for the actions of his subordinates. (*Compare* Compl., ¶48 (alleging Defendant Christianson's *individual* liability) *with* Compl., ¶49 (alleging Entity Defendants' *vicarious* liability).) As discussed above, in connection with Plaintiff Estate's 42 U.S.C. § 1983 claims against Defendant Christianson, Plaintiff Estate has alleged

---

[13] Plaintiff Estate has also alleged the liability of bystander "Doe" Defendants for aiding and abetting. (Compl., ¶47.) *See Stubblefield v. City of Novato*, 2016 U.S. Dist. LEXIS 5662, at *19-21 (N.D. Cal. Jan. 15, 2016) (citing *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 2005)); *see also Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) ("[O]fficers on the scene have a duty to intercede when their fellow officers violate the constitutional rights of a citizen.").

22

1  that Defendant Christianson should have been aware of the inadequate nature of his policies or customs

2  concerning the use of excessive and unreasonable force against persons contacted by his personnel based

3  on: (i) "[m]ultiple jury verdicts and/or judgments"; (ii) "[m]ultiple settlements paid"; and (iii) "[p]rior

4  incidents, complaints, and/or pending litigation" against his department and personnel. (Compl., ¶26.)

5
   [Plaintiff Estate] does not seek to hold [Defendant Christianson] vicariously liable for the
6  conduct of his deputies. Rather, [it] seeks to hold [Defendant Christianson] liable for his
   acts as a supervisor, which purportedly caused the violation of [Alejandro Sanchez]'s
7  rights… [¶] [Plaintiff Estate] alleges that [Defendant Christianson] is responsible for
   violating [Alejandro Sanchez's rights] because he failed to implement adequate policies
8  and failed to train his staff sufficiently to avoid violations of [persons'] rights. [Plaintiff
   Estate] thus seeks to hold [Defendant Christianson] personally liable for his conduct as a
9  supervisor. For this reason, [Defendant Christianson] is not immune under [Cal. Gov.
   Code] § 820.8.
10

11 *Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976, at *46-48 (C.D. Cal. Mar. 3, 2014); *see also Doe v.*

12 *Beard*, 63 F. Supp. 3d 1159, 1169 n.8 (C.D. Cal. 2014); *Alexander v. Cal. Dep't of Corr. & Rehab.*, 2014

13 U.S. Dist. LEXIS 177381, at *12-13 (E.D. Cal. Dec. 23, 2014); *Bass v. City of Fremont*, 2013 U.S. Dist.

14 LEXIS 32590, at *21-22 (N.D. Cal. Mar. 7, 2013); *Phillips*, 2013 U.S. Dist. LEXIS 170511, at *39;

15 *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1138 (N.D. Cal. 2000).

16      Therefore, Defendants' motion to dismiss Plaintiff Estate's art. I, § 13 claims must be denied.

17 **E.      FIFTH CLAIM: BANE ACT (CAL. CIV. CODE § 52.1(b))**

18      Plaintiffs have alleged Bane Act claims against various Defendants to this action. (Compl., ¶49.)

19      The Bane Act, codified as Cal. Civ. Code § 52.1, "civilly protects individuals from conduct aimed

20 at interfering with rights that are secured by federal or state law, where the interference is carried out 'by

21 threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018);

22 *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (Bane Act "provides a cause of

23 action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or

24 coercion.'").

25      **1.      Plaintiff Estate**

26      Plaintiff Estate has alleged Bane Act claims against Entity Defendants and Defendant

27 Christianson on the basis of direct liability (Compl., ¶55) and against Entity Defendants on the basis of

28 indirect/vicarious liability (Compl., ¶56).

23

As to Entity Defendants' direct liability, a public entity qualifies as a "person" subject to direct liability under the Bane Act—similar to *Monell* liability under 42 U.S.C. § 1983. *See Aguilar v. City of South Gate*, 2013 U.S. Dist. LEXIS 10611, at *13-20 (C.D. Cal. Jan. 25, 2013); *Estate of Adkins v. County of San Diego*, 2018 U.S. Dist. LEXIS 71715, at *17-18 (S.D. Cal. Apr. 25, 2018) (collecting cases). As to Entity Defendants' indirect/vicarious liability, a public entity is indirectly/vicariously liable, pursuant to the doctrine of *respondeat superior*, for the conduct of its subordinates acting within the scope of their employment. *See Cameron v. Craig*, 713 F.3d 1012, 1023-24 (9th Cir. 2013).

Defendants assert a one-sentence argument that unspecified Plaintiffs have failed to allege that unspecified Defendants have "threatened, intimated, and/or coerced decedent, with the specific intent to violate some right." (Memo. at 10:19-20.) The vagueness and imprecision of Defendants' argument precludes Plaintiffs from responding because they do not know to which claims or parties Defendants' argument is directed, where there are multiple theories of liability asserted by multiple Plaintiffs, against multiple Defendants. *See, e.g.*, *Archibald v. County of San Bernardino*, 2018 U.S. Dist. LEXIS 171243, at *21 (C.D. Cal. Oct. 2, 2018) ("Reciting a general statement of the law is not equivalent to presenting argument on that law.").

To the extent Defendants are attempting (inadequately) to argue that Plaintiffs cannot satisfy the "specific intent" element of any Bane Act claim alleged against Defendants that were not present at the scene when Alejandro Sanchez was injured or killed that argument must be rejected. "[I]t is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)); *see also Cornell*, 17 Cal. App. 5th at 803 (Bane Act liability may be imposed "even if the defendant did not in fact recognize the [unlawfulness] of his act"). In other words, to make out a Bane Act claim, "depending on the right alleged to have been interfered with, physical force is not required at all." *Cornell*, 17 Cal. App. 5th at 802 n.31; *see also Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) ("deliberate indifference" sufficient).

For example, in *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 990 (C.D. Cal. 2014), "each of the [s]upervisory [d]efendants was found liable for her own actions under [the Bane Act], including

24

witnessing and directing their subordinates to violate [p]laintiffs' rights." *Id*. At 1000. The Ninth Circuit affirmed the district court, holding that "[Cal. Gov. Code] § 820.8 [wa]s inapplicable because … [plaintiffs] d[id] not rely on vicarious liability, but, rather, rel[ied] on the supervisors' culpable action or inaction that proximately caused their injuries." 891 F.3d at 799.

> The jury could have concluded from evidence in the record … that [defendant supervisor] knowingly participated in creating and maintaining a culture of impunity for officers' use of unconstitutionally excessive force, thereby 'setting in motion a series of acts by' his subordinates that [defendant supervisor] 'knew or reasonably should have known would cause' the violations of [plaintiffs'] Eighth Amendment rights. The jury could also reasonably have concluded that in disabling or failing to follow procedures used to identify uses of excessive force, and in ensuring that violators escaped punishment, [defendant supervisor] created an environment where the mechanisms for supervision and control over the use of force operated ineffectively and sometimes not at all. Thus, the jury could also reasonably conclude that [defendant supervisor]'s 'inaction in the training, supervision, or control of his subordinates' provided a basis for supervisory liability.

*Id*. at 798-99 (internal citations omitted); *see also Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109, at *21-22 (N.D. Cal. Jan. 28, 2016) (plaintiff sufficiently stated claim against sheriff under the Bane Act for "fail[ure] to train his employees" and "implement[ing] policies, practices, and customs that led to the [decedent]'s death"); *Johnson*, 2014 U.S. Dist. LEXIS 196976, at *43-45 ("[S]everal [courts], including the California Supreme Court, have implicitly held that a … Bane Act claim can be asserted against a sheriff based on his or her conduct as a supervisor…").

### 2. Plaintiff Bertha Sanchez

Defendants argue that Plaintiff Bertha Sanchez, Alejandro Sanchez's mother, "seeks to hold [Defendant Christianson] liable for Bane Act violations under the principles of *respondent superior*" and, on that basis, he is immune under Cal. Gov. Code § 820.8. (Memo. at 10:24-11:1.) But Defendant Christianson is not alleged to be a party to Plaintiff Bertha Sanchez's Bane Act claims. (Compl., ¶¶59-62 (Plaintiff Bertha Sanchez's Bane Act claims do not allege Defendant Christianson's liability).)[14] Defendants' argument must be rejected because it seeks to dismiss claims that were not alleged.

Therefore, Defendants' motion to dismiss Plaintiffs' Bane Act claims must be denied.

---

[14] Defendants argue that "the [c]omplaint asserts that [Defendant] C[hristianson] is liable for the conduct of his subordinate law enforcement officers…" (Memo. at 10:27-11:1.) Defendants' argument is support by no citation to the complaint because none exists. (*See* Compl., ¶¶59-62.)

25

**F.      SEVENTH CLAIM: NEGLIGENCE (CAL. CODE CIV. PROC. § 377.30)**

Plaintiff Estate has alleged "survival" negligence claims against all Defendants to this action. (Compl., ¶69.) "[S]urvivor actions are based on the decedent's individual claims that he would have been entitled to assert for *his own* injuries." *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1164-65 (C.D. Cal. 2018); *see also Hayes v. County of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013).

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (Cal. 2013) (internal quotations & citations omitted).

> As to negligent supervision, to assess vicarious liability against a governmental employer, the court must examine whether the employee who acted or failed to act would have been personally liable for the injury. This determination rests on general principles of negligence. Under these principles, a person is obligated to exercise due care in his own actions so as not to create an unreasonable risk of injury to others. The standard of care is that which an ordinary person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances. Police officers owe a duty to the public at large to protect the peace and ensure public safety. This duty is not owed to any particular individual citizen. Nonetheless, this generalized duty does not absolve officers from liability for placing another person in a situation where that person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a third person.

*Mulligan v. Nichols*, 2013 U.S. Dist. LEXIS 198643, at *5-6 (C.D. Cal. Oct. 10, 2013) (citations omitted); *see also Han v. City of Folsom*, 695 F. App'x 197, 198-99 (9th Cir. 2017) ("In police cases, as well as others, the conduct in question 'must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care such doubt must be resolved as a matter of fact rather than of law.'" (quoting *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (Cal. 1970)).

First, Defendants argue that "California does not recognize the tort [of inadequate supervision, training, or discipline]" against a municipal supervisor because such a claim is, in reality, a vicarious claim against the supervisor and a direct claim against the municipality unsupported by the requisite statutory basis for imposing such liability. (Memo. at 11:6-21 (citing *Sanders v. City of Fresno*, 2006 U.S. Dist. LEXIS 48582, at *27-28 (E.D. Cal. July 3, 2006), in turn, citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1110-15 (Cal. Ct. App. 2004)).) Defendants' argument fails because the *Munoz*

26

decision was subsequently distinguished by the California Supreme Court on this point. *See Lindsay v. Fryson*, 2012 U.S. Dist. LEXIS 93814, at *16 (E.D. Cal. July 5, 2012) ("[T]he County is not correct to the extent it argues that a claim for negligent supervision, hiring, or retention necessarily or always raises a direct liability claim, and the California Supreme Court has rejected that proposition.").[15]

In *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861 (Cal. 2012), the California Supreme Court specifically distinguished the *Munoz* decision, *id*. at 874-75, holding that a municipal supervisor <u>could</u> be directly liable, and a municipal entity vicariously liable, for negligent hiring, retention, or supervision, in the presence of a "special relationship," *id*. at 877. Here, Alejandro Sanchez died as a result of being seized by and while in the custody of law enforcement officers. (Compl., ¶¶16-22.) Courts have specifically recognized the existence of a "special relationship" between arresting officers and arrestees. *See Lum v. County of San Joaquin*, 756 F. Supp. 2d 1243, 1254-55 (E.D. Cal. 2010) (citing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250-51 (Cal. Ct. App. 2008)); *Martinez v. Tulare County*, 2016 U.S. Dist. LEXIS 158212, at *13-16 (E.D. Cal. Nov. 14, 2016).

Consistent with the *William S. Hart* decision, numerous district courts have held that law enforcement supervisors may be directly liable under a negligent hiring, training, or supervision theory— including supervisors who "fail[] to adequately train, supervise, or discipline officers who used excessive force." *See Bordegaray v. County of Santa Barbara*, 2016 U.S. Dist. LEXIS 172269, at *44-45 (C.D. Cal. Dec. 12, 2016); *Mulligan*, 2013 U.S. Dist. LEXIS 198643, at *7 (denying motion to dismiss negligence claims "alleg[ing] that [defendant's] injury-causing conduct was reasonably foreseeable to the LAPD supervisors" but "the supervisors performed acts and omissions that exposed [p]laintiff to an unreasonable risk of harm."); *Bass*, 2013 U.S. Dist. LEXIS 32590, at *21-22 (denying motion to dismiss negligence claims alleging "[chief of police] had been 'given notice, on repeated occasions' of previous constitutional violations by [defendant officers] 'consisting of the use of unnecessary and excessive force in arresting and post arrest scenarios, and false assertions of crimes in investigative reports, and/or infractions against minority citizens,' that [chief of police], despite this knowledge, failed 'to take

---

[15] A state's highest court is controlling with respect to issues of state law; inconsistent or conflicting state appellate decisions must be disregarded by federal courts interpreting state law. *See Garmon v. County of Los Angeles*, 828 F.3d 837, 846-47 (9th Cir. 2016).

necessary[,] appropriate, or adequate measure to prevent the continued perpetration of this pattern of conduct.'"); *Dirks v. County of Los Angeles*, 2008 U.S. Dist. LEXIS 129462, at *19 (C.D. Cal. Apr. 10, 2008) (denying motion to dismiss negligence claims alleging sheriff's "'duty of ordinary care to ensure the proper screening, hiring, training[,] supervision[,] and retention of the persons in [his] employ'" and breach "by failing to ensure that deputies were properly trained," "by carelessly retaining [defendant officers] as deputies"); *Randolph v. City of East Palo Alto*, 2008 U.S. Dist. LEXIS 15607, at *35- 36 (N.D. Cal. Mar. 1, 2008) ("[T]here is a genuine dispute as to whether defendants were negligent in training and supervising these officers, given [defendant officer]'s alleged actions during the incident as well as during prior incidents."); *see also Alexander*, 2014 U.S. Dist. LEXIS 177381, at *12-13; *Rodriguez*, 89 F. Supp. 2d at 1138.

Second, Defendants argue that "[Plaintiff] E[state] seeks to hold [Defendant] C[hristianson] liable for the acts of his subordinates…" (Memo. at 11:22-28.) Defendants' argument fails to recognize that "[l]iability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (Cal. Ct. App. 2006); *Fetter v. Placer County Sheriff*, 2015 U.S. Dist. LEXIS 3976, at *14-15 (E.D. Cal. Jan. 12, 2015). "[Cal. Gov. Code] § 820.8 is inapplicable [where plaintiffs] rely on the supervisors' culpable action or inaction that proximately caused their injuries." *Rodriguez*, 891 F.3d at 799; *see also Estate of Zachary v. County of Sacramento*, 2010 U.S. Dist. LEXIS 33226, at *16-17 (E.D. Cal. Apr. 2, 2010) (denying Cal. Gov. Code § 820.8 immunity for state law claims, including negligence claims, where sheriff's alleged "failure to change his training policies or address [use of force] amounted to deliberate 'indifference to the rights of others' making him individually liable, as supervising officer…"). Defendants' argument demonstrates a failure to comprehend the allegations supporting Plaintiff Estate's negligence claims, where Defendant Christianson is <u>not</u> alleged to be vicariously liable for the actions of his subordinates. (*See* Compl., ¶72 (alleging Defendant Christianson's *individual* liability).) As discussed above, in connection with Plaintiff Estate's 42 U.S.C. § 1983 claims against Defendant Christianson, Plaintiff Estate has alleged that Defendant Christianson should have been aware of the inadequate nature of his policies or customs concerning the use of excessive and unreasonable force against persons contacted by his personnel based on: (i) "[m]ultiple jury verdicts and/or judgments"; (ii) "[m]ultiple

28

settlements paid"; and (iii) "[p]rior incidents, complaints, and/or pending litigation" against his department and personnel. (Compl., ¶26.) These claims give rise to supervisory negligence liability.

Therefore, Defendants' motion to dismiss Plaintiff Estate's negligence claims must be denied.

## G.     EIGHTH CLAIM: WRONGFUL DEATH (CAL. CODE CIV. PROC. § 377.60)

Plaintiff Bertha Sanchez has alleged "wrongful death" negligence claims against all Defendants to this action. (Compl., ¶76.) "[W]rongful death actions involve claims by the decedent's relatives to recover for *their own* injuries, caused by the death of their loved one." *Herd*, 311 F. Supp. 3d at 1164.

A wrongful death claim is "not derivative in character" of any related survival claims, *Hayes*, 736 F.3d at 1229, but it may "rely on [the same] finding that [defendants] acted unreasonably or used an unreasonable amount of force," *Adam v. County of Los Angeles*, 2014 U.S. Dist. LEXIS 198816, at *20-22 & n.7 (C.D. Cal. Aug. 28, 2014), common to related survival claims. *See* Cal. Code Civ. Proc. § 377.60 (claim results from "the death of a person caused by the wrongful act or neglect of another").

### 1.     Entity Defendants

Plaintiff Bertha Sanchez has alleged negligence claims against Entity Defendants on the basis of direct liability (Compl., ¶79) and indirect/vicarious liability (Compl., ¶80).

As to Entity Defendants' direct liability (Compl., ¶79), Defendants argue that "California courts have expressly rejected a breed of negligence against public entities…" (Memo. at 12:17-19 (citing *Munoz*, 120 Cal. App. 4th at 1110-15).) As discussed above, under Cal. Gov. Code § 815, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." *Eastburn*, 31 Cal. 4th at 1183. In this case, Cal. Code Civ. Proc. § 377.60 is the specific statute giving rise to liability against a public entity. *See Garcia*, 2005 U.S. Dist. LEXIS 31624, at *16-17 ("The County, if liable under *Monell*, is a proper defendant under Section 377.60 of the California Code of Civil Procedure" to a wrongful death claim alleging that "the County … caused the decedent's death by failing to train the [o]fficers in the appropriate use of force, a failure which the Plaintiffs claim resulted from a 'policy or custom.'").

As to Entity Defendants' indirect/vicarious liability (Compl., ¶80), Plaintiff Bertha Sanchez has alleged the liability of "Doe" Defendants (Compl., ¶78) and Defendant Christianson (Compl., ¶79). Entity Defendants are indirectly/vicariously liable under the *respondeat superior* doctrine. *See Robinson*,

29

278 F.3d at 1016 (citing Cal. Gov. Code § 815.2).

### 2.   Sheriff Christianson

Plaintiff Bertha Sanchez has alleged negligence claims against Defendant Christianson on the basis of direct liability. (Compl., ¶79.)

Defendants argue that "a supervisor cannot be held liable for the acts of his/her subordinates" and, on that basis, "[Defendant] C[hristianson] is immune from liability under [Cal. Gov. Code §] 820.8." (Memo. at 13:1-8.) As explained above, "[l]iability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Delfino*, 145 Cal. App. 4th at 815; *Fetter*, 2015 U.S. Dist. LEXIS 3976, at *14-15. "[Cal. Gov. Code] § 820.8 is inapplicable [where plaintiffs] rely on the supervisors' culpable action or inaction that proximately caused their injuries." *Rodriguez*, 891 F.3d at 799; *see also Estate of Zachary*, 2010 U.S. Dist. LEXIS 33226, at *16-17 (denying Cal. Gov. Code § 820.8 immunity from sheriff's alleged negligent training). Defendants' argument demonstrates a failure to comprehend the allegations supporting Plaintiff Bertha Sanchez's negligence claims, where Defendant Christianson is <u>not</u> alleged to be vicariously liable for the actions of his subordinates. (*See* Compl., ¶79 (alleging Defendant Christianson's *individual* liability).) As discussed above, in connection with Plaintiff Estate's 42 U.S.C. § 1983 claims against Defendant Christianson, Plaintiff Bertha Sanchez has alleged that Defendant Christianson should have been aware of the inadequate nature of his policies or customs concerning the use of excessive and unreasonable force against persons contacted by his personnel based on: (i) "[m]ultiple jury verdicts and/or judgments"; (ii) "[m]ultiple settlements paid"; and (iii) "[p]rior incidents, complaints, and/or pending litigation" against his department and personnel. (Compl., ¶26.)

Therefore, Defendants' motion to dismiss Plaintiff Bertha Sanchez's wrongful death claims must be denied.

## IV.   <u>CONCLUSION</u>

For the reasons stated, Plaintiffs Estate of Alejandro Sanchez, Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez respectfully requests that this Court deny Defendants County of Stanislaus, Stanislaus County Sheriff's Department, and Adam Christianson's Fed. R. Civ. P. 12(b)(6) motion to dismiss.

Dated: November 6, 2018

Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF ALEJANDRO SANCHEZ,
BERTHA SANCHEZ, IRENE MAMOURIEH,
CRISTINA GIRARDI, and MARINA SANCHEZ

31