1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ESTATE OF ALEJANDRO SANCHEZ, et al.,

Plaintiffs,

v.

COUNTY OF STANISLAUS, et al.,

Defendants.

No. 1:18-cv-00977-DAD-BAM

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS

(Doc. No. 9.)

This matter is before the court on the motion to dismiss brought by defendants County of Stanislaus, Stanislaus County Sheriff's Department, and Adam Christianson. (Doc. No. 9.) On November 20, 2018, that motion came before the court for hearing. Attorney Paul Masuhara appeared on behalf of plaintiffs Estate of Alejandro Sanchez, Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez. Attorney Drew M. Tate appeared on behalf of defendants. All counsel appeared telephonically. Having reviewed the parties' submissions, and having heard from counsel, defendants' motion will be granted in part and denied in part.

**BACKGROUND**

This action arises from the untimely death of Alejandro Sanchez ("decedent") on May 5, 2018. In their complaint plaintiffs allege as follows. On the date in question the decedent was at a truck stop located within Stanislaus County. (Doc. No. 1 ("Compl.") at ¶ 16.) While at the

truck stop, decedent was contacted by various Doe defendants, all of whom are employed by Stanislaus County (the "County") and the Stanislaus County Sheriff's Department (the "Sheriff's Department"). (*Id.* at ¶ 17.) Although the decedent was not violating any criminal law, a physical confrontation resulted between him and these Doe defendants which lasted for several minutes. (*Id.* at ¶¶ 18–19.) Defendants took decedent to the ground and climbed on top of him, while decedent yelled out in pain and begged defendants not to hurt him. (*Id.* at ¶¶ 20–21.) Decedent lost his life as a result of this incident. (*Id.* at ¶ 22.)

The complaint also alleges that multiple incidents of police misconduct have recently occurred involving the Sheriff's Department, frequently resulting in large monetary settlements being reached or jury verdicts being returned. (*See id.* at ¶ 26.) Based upon those previous incidents, plaintiffs allege a pattern and practice of police misconduct.

Plaintiffs bring a total of eight causes of action. On September 11, 2018, defendants moved to dismiss the complaint in part. (Doc. No. 9.) On November 6, 2018, plaintiffs filed their opposition brief. (Doc. No. 12.) Defendants filed their reply on November 13, 2018. (Doc. No. 13.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

| 1 | *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth |
| 2 | of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 |
| 3 | F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, |
| 4 | "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, |
| 5 | 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a |
| 6 | formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  *See also* |
| 7 | *Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by |
| 8 | mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the |
| 9 | plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws |
| 10 | in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State* |
| 11 | *Council of Carpenters*, 459 U.S. 519, 526 (1983). |

**DISCUSSION**

Defendants advance multiple arguments in support of their motion to dismiss.  Each is addressed in turn.

**A.      Dismissal of Stanislaus County Sheriff's Department**

First, defendants contend that the Sheriff's Department should be dismissed in its entirety because it is not a separate legal entity apart from the County, which is also named as a defendant.  (Doc. No. 9-1 at 4.)

Whether a party has the capacity to be sued in federal court is governed by Federal Rule of Civil Procedure 17(b)(3), which states that the capacity to be sued is determined by the law of the state in which the court is located.  California Government Code § 945 provides that "[a] public entity may sue or be sued."  Meanwhile, California Government Code § 811.2 defines a "public entity" to include "the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State."

It appears only one court has ever held that a sheriff's department is not a "public entity" under California law.  *See Garcia v. Los Angeles County*, 588 F. Supp. 700, 707 (C.D. Cal. 1984).  However, that conclusion was subsequently rejected by the Ninth Circuit, which held that the San

Jose Police Department could be sued in federal court. *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 n.1 (9th Cir. 1986). The court finds no basis to dismiss the Sheriff's Department from any of plaintiffs' state law causes of action.

The arguably more complicated question is whether the Sheriff's Department is a "person" within the meaning of 42 U.S.C. § 1983 and is therefore a proper defendant as to causes of action brought pursuant to that provision. In seeking dismissal, defendants cite to a concurring opinion in *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J., concurring), which stated that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." Defendants misconstrue this statement. In reaching that conclusion, Judge Ferguson's concurring opinion cited to the Ninth Circuit's decision *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995), which held that the Tacoma Narcotics Enforcement Team was not a "person" under § 1983 because it was an intergovernmental task force composed of several local, county, and state governmental entities, rather than a separate legal entity unto itself. 65 F.3d 784, 791–92 (9th Cir. 1995). Because this case includes claims against a sheriff's department, and not an intergovernmental association, the court finds *Hervey* to be of only limited guidance. Moreover, the concurrence in *Kama* also relied upon an Eleventh Circuit decision in *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), where the court found that the county sheriff's department could not be sued under § 1983 because it lacked the capacity to be sued *under Alabama law*. California law is to the contrary. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.").

More recently, the Ninth Circuit has permitted an action under § 1983 to proceed against a California sheriff's department notwithstanding the department's contention that it is not a "person" within the meaning of § 1983. *Streit v. County of Los Angeles*, 236 F.3d 552, 564–65 (9th Cir. 2001) (affirming the district court's holding that when the Los Angeles County Sheriff's Department acts on behalf of the County, it is subject to liability under 42 U.S.C. § 1983); *see also Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir. 2001) (finding that the Shasta

4

County Sheriff is subject to liability under § 1983 after concluding that the "Shasta County Sheriff acts for the County, not the state, when investigating crime in the county"). The decisions in *Streit* and *Brewster* are binding on this court and control the resolution of this issue. Therefore, defendants' motion to dismiss the Sheriff's Department as a defendant in this case will be denied.[1]

**B.     Sufficiency of *Monell* Allegations**

Next, defendants seek dismissal of plaintiffs' first cause of action for excessive use of force against the County. Defendants contend that this cause of action, brought on a theory of *Monell* liability, is not supported by sufficient factual allegations in the complaint to establish a policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 692; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los*

---

[1] The court acknowledges that numerous district courts within the Ninth Circuit have found that sheriff's departments and police departments are not "persons" within the meaning of § 1983, and have dismissed them as defendants on that basis. *See, e.g.*, *Pearson v. Bakersfield Police Dep't*, No. 1:18-cv-0372-LJO-JLT, 2018 WL 3198065, at *5 (E.D. Cal. June 27, 2018); *Cartee v. Imperial Cty. Sheriff's Dep't*, No. 3:18-cv-00327-CAB-AGS, 2018 WL 2411742, at * 3 (S.D. Cal. May 29, 2018) ("[D]epartments of municipal entities are not 'persons' subject to suit under § 1983; therefore, a local law enforcement department (like the Imperial County Sheriff's Department) is not a proper party."); *Anderson v. Sacramento Police Dep't*, No. 2:16-cv-0527-TLN-GGH PS, 2016 WL 3091162, at *4 (E.D. Cal. June 2, 2016) (same); *Gomez v. County of Fresno*, No. 1:16-cv-00122-AWI-BAM, 2016 WL 8730877, at *2 (E.D. Cal. Feb. 12, 2016) (same); *Rodriguez v. County of Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) (same); *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI, 2013 WL 394522, at *13 (E.D. Cal. Jan. 30, 2013) ("The Clovis Police Department is a municipal department within the City of Clovis, and is not, as a general matter, considered a 'person' within the meaning of Section 1983."). The undersigned has considered these decisions but comes, as have other district courts, to the opposite conclusion. *See, e.g.*, *Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *3 (E.D. Cal. Dec. 14, 2018); *Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.17 (E.D. Cal. 2013); *Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *11 (N.D. Cal. Nov. 22, 2011).

*Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)).  A *Monell* claim can be established in one of three ways.  *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).  First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).  Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170.  Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61).  "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

        Defendants' motion to dismiss raises two separate challenges to the sufficiency of plaintiffs' complaint with respect to its *Monell*-related allegations.  First, defendants contend that the complaint contains factual allegations regarding an insufficient number of incidents so that the allegations do not adequately demonstrate the existence of a policy or custom.  (Doc. No. 9-1 at 8–9.)  Second, defendants argue that even if the complaint sufficiently alleges the existence of a policy or custom, it does not contain allegations describing the alleged policy in sufficient detail. (*Id.*)  Each of these arguments is addressed below.

/////

1          1.      Whether Plaintiff Has Alleged a Sufficient Number of Incidents

2          "Liability for improper custom may not be predicated on isolated or sporadic incidents; it

3  must be founded upon practices of sufficient duration, frequency and consistency that the conduct

4  has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th

5  Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001);

6  *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional

7  deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Cain v.*

8  *City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4,

9  2017) (dismissing the plaintiff's *Monell* claim because it alleged only a single encounter between

10  plaintiff and jail staff).  Although "[i]t is difficult to discern from the caselaw the quantum of

11  allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v.*

12  *County of Merced*, No. 1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7,

13  2017), "where more than a few incidents are alleged, the determination appears to require a fully-

14  developed factual record." *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL

15  2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017); *see also*

16  *Becker v. Sherman*, No. 1:16-cv-00828-AWI-MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec.

17  11, 2017) (concluding that "four assaults related to [plaintiff's] housing assignment and status as

18  a transgender inmate . . . sufficiently alleged the existence of a CDCR custom"), *findings and*

19  *recommendations adopted,* 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Bagley v. City of*

20  *Sunnyvale*, No. 16-CV-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where

21  courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled

22  multiple incidents of alleged violations.").

23          As examples of previous incidents involving excessive use of force by County and

24  Sheriff's Department employees, plaintiffs point to numerous prior cases in which defendants

25  were either found liable or agreed to pay a substantial monetary sum to resolve the excessive use

26  of force claims brought against them.  All of these cases appear to involve allegations of

27  excessive use of force, and all of them occurred in the time period since defendant Christianson

28  became the Stanislaus County Sheriff.  (*See* Compl. at ¶ 26.)  These include, but are not limited

to: (1) a $565,000 settlement paid to plaintiffs in a case where County Sheriff's deputies allegedly used tasers and pepper spray against a mentally-ill detainee, resulting in his death; (2) a $200,000 settlement in which the plaintiffs alleged that County Sheriff's deputies used tasers against an individual suffering from a seizure, resulting in death; and (3) a $160,000 settlement in which the plaintiffs alleged that County Sheriff's deputies made false arrests and used excessive force against two individuals. (*Id.*) Whether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the injury to decedent in this case, are factual issues to be determined following the discovery phase of this litigation. *See J.M. ex rel. Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018). The undersigned is satisfied that plaintiffs' complaint includes sufficient factual allegations to plausibly allege the existence of a policy or custom pursuant to *Monell*.

        2.        <u>Whether the Complaint Describes the Policy or Custom in Sufficient Detail</u>

        Defendants next contend that plaintiffs' complaint fail to identify the specific policy that caused the physical confrontation with defendant. (Doc. No. 9-1 at 5–6.)

        The Ninth Circuit has made clear that *Monell* claims "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In addition to sufficient factual allegations, however, some district courts have held that plaintiffs must also identify the particular policy or custom that caused the constitutional violation without resorting to conclusory statements. *See Autry v. Cleveland Cty. Sheriff's Dep't*, No. CIV-15-1167-D, 2018 WL 719044, at *9 (W.D. Okla. Feb. 5, 2018) (dismissing plaintiffs' *Monell* claim after finding that plaintiffs "fail to identify a particular policy or practice . . . that was deficient"); *Noisette ex rel. Noisette v. City of Philadelphia*, No. CV 16-6419, 2017 WL 4765650, at *4 (E.D. Pa. Oct. 20, 2017) (noting that plaintiff "points to no specific times, dates, policy names, policy substance, or specificities about why the policies were inadequate"); *Johnson v. Cate*, No. 1:10-cv-00803-AWI, 2012 WL 1076209, at *3 (E.D. Cal. Mar. 29, 2012) (requiring plaintiff to "describ[e] in detail a county policy that was the moving

force behind the alleged constitutional violations").  Other courts have adopted a more lenient pleading standard, holding that while a complaint must include a sufficient quantum of factual material to plausibly suggest the existence of a policy or custom, the policy or custom itself need not be specifically alleged, or may be alleged only generally.  *See Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *9 (E.D. Cal. Feb. 23, 2012) ("Plaintiffs need not articulate the intricacies of the alleged policy further at the pleading stage."); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011) ("In the context of municipal liability . . . [the] allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.").

Certainly, the complaint must contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct—and as the court has already found, plaintiffs have satisfied this burden.  Collectively, these factual allegations must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also City of Galveston*, 800 F. Supp. 2d at 843–44 ("Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.").  As to the details of the policy or custom, however, the court concludes that this is a subject more properly left to development through discovery.  It is a rare plaintiff who will have access to the precise contours of a policy or custom prior having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork.  *See Creer v. Vallejo*, No. 2:14-cv-01428-JAM-DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015) (citing *City of Galveston*, 800 F. Supp. 2d at 842–43); *Mitchell v. Twp. of Pemberton*, No. CIV.09-810(NLH)(AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010) ("[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider.").  As one district court thoughtfully concluded, a complaint alleging a *Monell* claim must "pair general averments of a policy or custom with

9

particular examples." *Ulloa v. Prince George's County*, No. CV DKC 15-0257, 2015 WL 7878956, at *6 (D. Md. Dec. 4, 2015). Thus, although factual allegations must plausibly allege the existence of a policy or custom that was the moving force behind the constitutional violation at issue, the policy or custom itself need only be alleged in general terms.

As noted above, plaintiffs have identified multiple prior instances of alleged misconduct by the County and the Sheriff's Department in the allegations of their complaint. In addition, the complaint alleges that these actions occurred due to either a lack of training, or a policy of employing excessive and unreasonable force. (Compl. at ¶ 32.) These descriptions of the policies or customs at issue, although not particularly detailed, are sufficient at this stage of the litigation to place defendants on notice of the nature of the claims against them and allow them to prepare an adequate defense.

Defendants' motion to dismiss for failure to adequately plead a *Monell* claim will therefore be denied.

## C.    Excessive Force Allegations Against Defendant Christianson

Next, defendants seek dismissal of the first cause of action as to defendant Christianson, in which plaintiffs seek to hold defendant Christianson liable for the excessive use of force on a theory of supervisory liability. Defendants argue the complaint contains insufficient factual allegations against defendant Christianson to state a claim. (Doc. No. 9-1 at 6–7.)

"An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (internal quotation marks omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City*

*of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Watkins*, 145 F.3d at 1093).

Here, the undersigned can find no factual allegations in plaintiffs' complaint that, if proven, would demonstrate that defendant Christianson took any action with respect to the alleged constitutional deprivations.  The allegations supporting this claim are not based on defendant Christianson's conduct, but are instead premised solely on his role as a supervisor.  For instance, plaintiffs contend in their opposition to the pending motion that based upon his position as sheriff, defendant Christianson knew or should have known of the inadequacies of the Sheriff's Department's policies regarding excessive and unreasonable uses of force.  (Doc. No. 12 at 18–19.)  However, bare allegations that a supervisor "knew or should have known" of misconduct are conclusory, and therefore not entitled to the presumption of truth.  *See Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing a complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew, or should have known'"" of the violation); *Sullivan v. Biter*, No. 1:15-cv-00243-DAD-SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017).  Left unsaid—both in the complaint and in plaintiff's opposition brief—is what defendant Christianson actually did or failed to do.  Absent such factual allegations, plaintiffs' excessive force claim against defendant Christianson will be dismissed with leave to amend.

**D.  Familial Association**

Next, defendants move for dismissal of plaintiffs' third cause of action, which alleges that plaintiffs Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez were deprived of their rights of association, companionship, and society under the First and Fourteenth Amendments as a result of the decedent's death.[2]  Defendants' argue that Irene Mamourieh,

---

[2]  Bertha Sanchez is decedent's mother, while Irene Mamourieh, Cristina Girardi, and Marina Sanchez are his sisters.  (Compl. at ¶¶ 6–9.)

Cristina Girardi, and Marina Sanchez do not have cognizable claims against defendants as a matter of law in light of recent Ninth Circuit authority and, alternatively, that these plaintiffs have failed to allege sufficient facts to state a claim in any event. (Doc. No. 9-1 at 8–9.)

At the outset, it is necessary to clarify plaintiffs' theory of liability with respect to this claim. Defendants argue, and plaintiffs agree, that siblings do not possess a constitutionally protected liberty interest in companionship and society under the Fourteenth Amendment. *See Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) ("Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children."). Plaintiffs contend, however, that their claim alleges an unwarranted interference with their rights of association under the First Amendment and is therefore viable.[3] (Doc. No. 12 at 20.)

Multiple district courts have distinguished *Ward*, which relied only on the Fourteenth Amendment, in finding that claims for freedom of association under the First Amendment may be brought outside of the parent-child context. *See J.P. ex rel. Villanueva v. County of Alameda*, No. 17-CV-05679-YGR, 2018 WL 1933387, at *6 (N.D. Cal. Apr. 24, 2018) ("The County Defendants' reliance on *Ward* to argue that plaintiff fails to plead a cognizable claim for violation of association is thus misplaced as *Ward* did not address the First Amendment."); *Kaur v. City of Lodi*, No. 2:14-cv-00828-GEB-AC, 2014 WL 3889976, at *7 (E.D. Cal. Aug. 7, 2014) (finding that siblings could bring a First Amendment claim against police officer and explaining that "the Officer Defendants have not shown that the principle enunciated in *Ward* extends to Plaintiffs' First Amendment claims"); *Graham v. County of Los Angeles*, No. CV 10-05059 DDP EX, 2011 WL 3754749, at *2 (C.D. Cal. Aug. 25, 2011) (distinguishing *Ward* and finding that plaintiff stated a First Amendment claim over the death of her fiancé because the relationship "was sufficiently personal and intimate to merit the protection of the First Amendment").

/////

---

[3] Plaintiffs also explain that they refer to the Fourteenth Amendment in their complaint not as a theory of substantive liability, but instead because the First Amendment applies to state and local entities by virtue of its incorporation through the Fourteenth Amendment's Due Process Clause. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005).

After defendants' motion to dismiss was filed, however, the Ninth Circuit issued an unpublished decision in which the court concluded that the right of intimate association is analyzed "in the same manner regardless whether we characterize it under the First or Fourteenth Amendments." *Mann v. City of Sacramento*, 748 Fed. App'x 112, 115 (9th Cir. 2018).[4] In *Mann*, the Ninth Circuit extended the holding in *Ward* and concluded that even if brought under the First Amendment, plaintiffs' claims based upon their rights of association, companionship, and society were foreclosed because they were "adult, non-cohabitating siblings" of the decedent and did not "enjoy a right to intimate association" with him. *Id*. Although unpublished and conclusory in its analysis, the undersigned will follow the Ninth Circuit's decision in *Mann* absent authority to the contrary.[5]

At oral argument, plaintiffs' counsel requested that if the court adopted *Mann*'s reasoning, that leave to amend be granted with respect to that claim. Out of an abundance of caution, the court will do so. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (noting that leave to amend under Federal Rule of Civil Procedure 15 "shall be freely given when justice so requires"). As noted above, however, the court in *Mann* adopted the standard from *Ward*, which held that "adult, non-cohabitating siblings do not 'possess a cognizable liberty interest in their brother's companionship.'" *Mann*, 748 Fed. App'x at 115 (quoting *Ward*, 967 F.2d at 283–84). Plaintiffs' opposition concedes that *Ward* precludes decedent's siblings from alleging a Fourteenth Amendment claim. (Doc. No. 12 at 20.) Thus, it is questionable how plaintiffs' claims could fare any better under the First Amendment in light of the decision in *Mann*. Nonetheless, the court will dismiss this cause of action to the extent it is alleged by decedent's siblings with leave to amend.

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[5] The court does not understand *Mann* as holding that First Amendment claims for familial association are categorically barred, but rather that the standing requirements for a familial association claim are the same whether alleged under the First or Fourteenth Amendments. Thus, as decedent's mother, plaintiff Bertha Sanchez's familial association claim survives even after *Mann*. *See Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985) ("[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child.").

13

**E.      Excessive Force under the California Constitution**

Next, defendants seek dismissal of plaintiffs' fourth cause of action, which alleges excessive use of force in violation of article 1, § 13 of the California Constitution.  Defendants argue this cause of action is foreclosed as a matter of law.  (Doc. No. 9-1 at 9–10.)

"The California Supreme Court has … not decided whether there is a private cause of action for damages under article I, section 13, which protects against unreasonable searches and seizures." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (2017).  Federal district courts are presently split on this question.  *Compare, e.g.*, *Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198, 1202–03 (N.D. Cal. 2018) ("[I]t seems likely the California courts would determine that Article I, Section 13 creates a private right of action for a damages remedy, but they have not yet decided this important issue of state law."); *Daniel v. City of Antioch*, No. C-13-1084 MMC, 2013 U.S. Dist. LEXIS 138895, at *6 (N.D. Cal. Sept. 25, 2013) (same); *Camarillo v. City of Maywood*, No. CV 07-3469 ODW (SHX), 2008 WL 4056994, at *6 (C.D. Cal. Aug. 27, 2008) (same); *Smith v. County of Riverside*, No. EDCV 05-512-VAP, 2006 U.S. Dist. LEXIS 98213, at *21 (C.D. Cal. May 16, 2006) (same), *with e.g.*, *Autotek Inc. v. County of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2017 WL 3149923, at *9 (E.D. Cal. July 25, 2017) ("California Constitution Article I section 13, upon which this claim rests, does not confer a private right of action for damages."); *Garner v. City & County of San Francisco*, No. 14-CV-05172-EDL, 2016 WL 10859785, at *7 (N.D. Cal. Feb. 23, 2016) (same); *Cabral v. County of Glenn*, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) (same); *Manning v. City of Rohnert Park*, No. C 06-03435 SBA, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007) ("Neither the plain language of the article I, section 13, nor the available legislative history indicate an intent on behalf of the California Legislature to permit the recovery of monetary damages for its violation.").

Whether a provision of the California Constitution provides for a private right of action is governed by the analysis set forth in *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300 (2002).  *Katzberg* employs a two-step approach.  First, the court must consider "whether there is evidence from which [it] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation."  *Id.*

at 317.  In making this determination, courts look to the language and history of the provision, as well as to whether it contains guidelines, mechanisms, or procedures implying a monetary remedy.  *Id.*  Second, if the court finds no affirmative intent either to authorize or prohibit a private right of action, the court must undertake the "constitutional tort" analysis first laid out in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  *Id.*  Several factors are relevant to this inquiry, including (1) whether an adequate remedy exists, (2) the extent to which a constitutional tort action would change established tort law, and (3) the nature and significance of the constitutional provision.  *Id.*  If these factors counsel against recognizing a private right of action, the inquiry ends.  *Id.*  Alternatively, if these factors favor recognizing a constitutional tort, the court must consider "special factors, . . . including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages."  *Id.*

As the framework addressed above demonstrates, the *Katzberg* analysis is quite complex.  Here, however, defendants have not briefed the issue at all.  At oral argument, defendants merely directed the court to other district court cases finding the absence of a private right of action.  Those cases are neither binding nor particularly persuasive, and the court declines to delve into this analysis without appropriate briefing.  *See Shen v. Albany Unified Sch. Dist.*, No. 3:17-CV-02478-JD, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018) ("Defendants have not done [*Katzberg*] justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form.").  Defendants bear the burden of persuasion on their motion to dismiss, and here, they have failed to carry it.  *See Welchen v. County of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *10 (E.D. Cal. Oct. 11, 2016) ("[S]ince it is Defendants' burden at the motion to dismiss juncture, the Court cannot find that Defendants' motion is meritorious."); *Sevey v. Soliz*, No. C 10-3677 LHK PR, 2011 WL 2633826, at *3 (N.D. Cal. July 5, 2011).  Accordingly, the undersigned declines to dismiss plaintiffs' fourth cause of action on this basis.

Defendants argue, in the alternative, that even if article I, § 13 of the California Constitution does provide a private right of action, defendant Christianson, as a sheriff, is immune

from liability pursuant to California Government Code § 820.8. (Doc. No. 9-1 at 9–10.) That provision provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." Plaintiffs contend, however, that § 820.8 is inapplicable because their claim against defendant Christianson is based upon his own acts, rather than upon vicarious liability. (Doc. No. 12 at 31–32.) However, as noted above in addressing plaintiffs' cause of action for the alleged unreasonable use of force, plaintiffs' complaint contains no factual allegations sufficient to state such a claim against defendant Christianson. That same analysis applies here. Accordingly, plaintiffs' fourth cause of action alleging excessive use of force in violation of article 1, § 13 of the California Constitution will be dismissed with respect to defendant Christianson.

**F.      Bane Act Claim**

Next, defendants move for dismissal of plaintiffs' Bane Act claim because the complaint contains no factual allegations that any defendant used threats, intimidation, or coercion with the specific intent to violate decedent's rights. (Doc. No. 9-1 at 10.)

Defendants' argument on this point is threadbare and difficult to decipher. As best the court can discern, however, defendants appear to be arguing that the complaint inadequately alleges a specific intent by defendants to violate some right.

To state a Bane Act claim, "[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015); *see also Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (2017) (collecting cases and agreeing with those holding that "in Bane Act cases . . . where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force") (internal quotation marks and brackets omitted), *as modified* (Nov. 17, 2017), *and review denied* (Feb. 28, 2018). On the facts alleged in the complaint before the court— specifically, a physical altercation between law enforcement officers and decedent, resulting in

decedent's death—the court is satisfied that a viable Fourth Amendment claim has been alleged. Moreover, under *Cornell*, that allegation of excessive use of force also suffices to establish threats, intimidation, or coercion. Nothing more is required to state a cognizable Bane Act claim. Accordingly, the court will reject defendants' argument to the contrary.

Defendants also repeat their argument, already addressed above, that defendant Christianson is entitled to immunity from the Bane Act claims. That argument is equally applicable here: because the complaint contains no factual allegations against defendant Christianson, this cause of action will be dismissed only with respect to him.[6]

### G. Negligence

Next, defendants move to dismiss plaintiffs' fourth and seventh cause of action to the extent they sound in negligence.[7] Plaintiffs' theory of negligence is twofold. First, plaintiffs allege that Does 1 to 25 breached a duty owed to the decedent by using excessive force against him. (Compl. at ¶ 71.) Second, plaintiffs allege that defendant Christianson and Does 26 to 50 breached a duty owed to the decedent by hiring, retaining, and failing to adequately train and supervise Does 1 to 25. (*Id.* at ¶ 72.) As to both theories, plaintiffs argue that both the County and the Sheriff's Department are liable on a *respondeat superior* theory. (*Id.* at ¶ 73.) Defendants contend that under California law, negligence may not be based on allegations of

/////

---

[6] Plaintiffs state in opposition to the motion to dismiss that "Defendant Christianson is <u>not</u> alleged to be a party to Plaintiff Bertha Sanchez's Bane Act claim," and that "Defendants' argument must be rejected because it seeks to dismiss claims that were not alleged." (Doc. No. 12 at 34.) However, plaintiffs' fifth cause of action, under the heading "Bane Act," states that the claim "is asserted by Plaintiffs ESTATE OF ALEJANDRO SANCHEZ and BERTHA SANCHEZ against Defendants COUNTY OF STANISLAUS, STANISLAUS COUNTY SHERIFF'S DEPARTMENT, ADAM CHRISTIANSON, and DOE 1 to 50." (Compl. at ¶ 52.) As the court construes this statement, both of these plaintiffs have therefore attempted to assert Bane Act claims against defendant Christianson, among other defendants.

[7] Plaintiffs' fourth cause of action is not presented as a negligence claim, but rather as a claim brought under the Article I, § 13 of the California Constitution. Defendants provide no authority suggesting that claims brought under that constitutional provision are treated in the same manner as negligence claims, and the court has found none. Accordingly, the court's analysis here is confined to plaintiffs' seventh cause of action.

inadequate supervision, training, or discipline, and therefore, all causes of action brought under such a theory of liability should be dismissed.  (Doc. No. 9-1 at 11.)

In support of their argument that negligence claims are categorically barred if based upon allegations of inadequate supervision, training, or discipline, defendants cite to the decision in *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004).  In *Munoz* the California Court of Appeal noted that under Government Code § 815, "a public entity is not liable for an injury, except as otherwise provided by statute."  120 Cal. App. 4th at 1111 (internal quotation marks and brackets omitted) (quoting *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1127 (2002)).  A subsequent decision of the California Supreme Court explained the holding in *Munoz* as follows:

> in [Munoz], the relatives of a woman shot by police, who had been summoned because of her erratic behavior, sued the officer who shot her and his employing city.  The appellate court held the city could be vicariously liable for the officer's unreasonable use of deadly force, but rejected a theory of direct liability based on the city's negligence in the selection, training, retention, supervision, and discipline of police officers.  As no statute made a public entity liable for this type of negligence, no direct liability could be established under section 815 as interpreted in *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175 (2003).  The court went on to reject the plaintiffs' argument that the city's negligence was actually the basis for vicarious liability because public entities' negligence liability is inherently vicarious.

*C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 875 (2012) (internal quotation marks and citations omitted).  Thus, the court in *Munoz* found that under California law, "no . . . provision makes public agencies liable for their own negligent conduct or omission to the same extent as a private person or entity."  120 Cal. App. 4th at 1111.

Defendants' argument is unpersuasive in multiple respects.  First, the decision *Munoz* would seem to be relevant only with respect to public entities, which, here, are the County and the Sheriff's Department.  However, plaintiffs' cause of action for negligence is also alleged against defendant Christianson and the Doe defendants.  Defendants offer no explanation as to how *Munoz* has any applicability to those defendants.  Second, in *William S. Hart*, 53 Cal. 4th 861, 873 (2012), the California Supreme Court explicitly distinguished the holding in *Munoz*.  In *William S. Hart*, the plaintiff alleged that a school district's administrators knew or should have known of a guidance counselor's dangerous propensities, "but nevertheless hired, retained and

18

failed to properly supervise her." *William S. Hart*, 53 Cal. 4th at 875. The court held that these allegations, if true, "could make the District liable under a vicarious liability theory." *Id.* Defendants are therefore incorrect in arguing that "California does not recognize the tort" of a negligent failure to supervise, train, or discipline. (Doc. No. 9-1 at 11.) Moreover, the holding in *William S. Hart* demonstrates that the public entity itself may be held liable in appropriate circumstances. As with other torts, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person . . . and the public entity is vicariously liable for any injury which its employee causes . . . to the same extent as a private employer." *William S. Hart*, 53 Cal. 4th at 868; *see also de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 249 (2007) ("When assessing a claim for vicarious liability against a governmental employer based on the acts or omissions of its employee, a court must examine whether the employee who acted or failed to act would have been personally liable for the injury.").

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (brackets omitted). With respect to whether a cognizable duty exists here, plaintiffs allege that Christianson and Does 26 to 50 (whom the complaint describes as policy-making authorities) had a duty of care to adequately hire, retain, and train the law enforcement officers under their command. (Compl. at ¶ 72.) However, California law does not recognize a general duty of care on the part of supervisors with respect to negligent hiring, retention, or training. Rather, as explained by the California Supreme Court in *William S. Hart*, "the potential legal responsibility of District administrators and supervisors for negligently hiring or retaining . . . arises from the special relationship they had with plaintiff." 53 Cal. 4th at 877; *accord Kendrick v. County of San Diego*, No. 15-cv-2615-GPC(AGS), 2018 WL 1316618, at *10 (S.D. Cal. Mar. 14, 2018) ("[A] plaintiff must allege a special relationship in order to bring a negligent hiring claim"); *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at *6 (E.D. Cal. July 6, 2012) (noting that *William S. Hart* "limited the viability of type of vicarious liability claim at issue . . . to situations where the supervisory or administrative personnel have a 'special

relationship' with the plaintiff or class of plaintiffs"), *findings and recommendations adopted*, 2012 WL 3727157 (E.D. Cal. Aug. 27, 2012).  In finding such a special relationship, the California Supreme Court noted that "a school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, analogous in many ways to the relationship between parents and their children."  *William S. Hart*, 53 Cal. 4th at 869; *see also de Villers,* 156 Cal. App. 4th at 249 (declining to impose vicarious liability on the County based upon the actions of its employees after finding that those employees had no "special protective relationship to the victim").  Therefore, whether defendant Christianson and the unnamed policy-making defendants may be held directly liable for negligent hiring, retention, and failure to train, and whether the County and Sheriff's Department may be held vicariously liable on that basis, turns on whether Christianson and the unnamed policy-making defendants had a special relationship with the decedent.

In arguing that a special relationship exists here, plaintiffs note that several courts have recognized the existence of a "special relationship" between arresting officers and arrestees. (Doc. No. 12 at 36.)  This misstates the inquiry in the court's view since there is no allegation in plaintiffs' complaint that the officers who encountered the decedent were also responsible for the Department's hiring or training practices.  The question is not whether the arresting officers had a special relationship with the decedent, but rather whether the supervisors responsible for hiring, training, disciplining, and so forth had such a special relationship.  Here, plaintiffs offer no argument as to how defendant Christianson's duty of care towards the decedent amounted to anything more than the general duty to use reasonable care.  Far from alleging a "special relationship" with the decedent, the complaint does not allege that defendant Christianson or any of the unnamed policy-making defendants had any relationship with the decedent at all.

In addition, district courts have declined to find such a relationship under circumstances similar to those presented here.  *See Kendrick*, 2018 WL 1316618, at *11 ("Here, Plaintiff does not allege a special relationship existed between [the decedent] and Sheriff Gore.  Therefore, Sheriff Gore cannot be personally liable for a claim of negligent hiring and supervision and

consequently, the County cannot be vicariously liable under California Government Code section 815.2."); *Fuentes v. City of San Diego*, No. 3:16-cv-02871-BEN-JMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017) ("Plaintiffs generally allege that the City and/or SDPD have a duty to protect people from harm and exercise care in selection, retention, training, and supervision of their employees. However, these alleged duties do not resemble the enhanced duties imposed on school personnel that formed the basis for their special relationship with the minor plaintiff in *William S. Hart*."); *Willis v. County of Sacramento*, No. 2:13-cv-01671-MCE-EFB, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (citing *William S. Hart* and dismissing plaintiff's claim against the county sheriff for negligent hiring, supervision, and retention "because Plaintiff did not allege that a duty existed between [the sheriff] and Plaintiff"); *Lindsay*, 2012 WL 2683019, at *7 (concluding, in a case alleging that Yuba County Child Protective Services negligently supervised, hired, and retained its employees, that "there are no allegations suggesting that . . . supervisors undertook or otherwise had a special relationship with plaintiff").

Accordingly, the court will dismiss plaintiffs' seventh cause of action to the extent it is based upon negligent hiring, retention, training, or supervision, with leave granted to plaintiffs to amend their complaint with regard to the existence of a special relationship. In addition, as discussed above, plaintiffs' failure to include any factual allegations as to defendant Christianson necessitates dismissal of this cause of action in its entirety, regardless of the basis of the claim, as to him.

**H.      Wrongful Death Claim**

Finally, defendants seek dismissal of the eighth cause of action, a wrongful death claim brought by Bertha Sanchez, decedent's mother. In their motion, defendants made the same argument they advanced as to plaintiffs' negligence claim, arguing that public entities may not be held liable for negligent selection, training, retention, supervision, and discipline. (Doc. No. 9-1 at 12.)

Plaintiffs acknowledge that under California Government Code § 815, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (Doc. No. 12 at 38.) However, plaintiffs contend that

California Code of Civil Procedure § 377.60 provides that certain individuals may assert a "cause of action for the death of a person caused by the wrongful act or neglect of another." (*Id.*)

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). Thus, to state a claim for wrongful death, plaintiffs must state a claim as to the underlying act—here, the negligent failure to hire, retain, train, or supervise law enforcement officers. Plaintiffs have failed to do so here. As discussed above, plaintiff Estate of Sanchez cannot state a negligence claim based on an alleged failure to train because the complaint does not include factual allegations that the supervisorial defendants had a "special relationship" towards the decedent, meaning that they did not owe plaintiffs a heightened duty of care. Here, plaintiff Bertha Sanchez cannot state such a claim against the supervisorial defendants for the same reason: absent a viable negligence claim, the wrongful death claim necessarily fails. *See A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592, at *5 (E.D. Cal. Oct. 12, 2016) (finding that in the absence of a special relationship, "there is no negligence liability, which means there can be no liability for wrongful death").

Accordingly, plaintiff Bertha Sanchez's cause of action for wrongful death based on negligent hiring, retention, and/or supervision will also be dismissed with leave to amend and will also be dismissed, with leave to amend, with respect to defendant Christianson due to the lack of factual allegations against him in the complaint.

## CONCLUSION

For the reasons explained above,

1.    Defendants' motion to dismiss (Doc. No. 9) is granted in part;

2.    The first, fourth, fifth, seventh, and eighth causes of action are dismissed with respect to defendant Christianson with leave to amend;

3.    The third cause of action as brought by plaintiffs Marina Sanchez, Irene Mamourieh, and Cristina Girardi is dismissed with leave to amend;

/////

22

4. The seventh and eighth causes of action are dismissed with leave to amend to the extent those claims are predicated upon an alleged failure to adequately hire, retain, train, or supervise; and

5. Within twenty-one days from the date of service of this order, plaintiffs are directed to either file an amended complaint or notify the court of their intent to proceed only on those claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated: **April 18, 2019**

UNITED STATES DISTRICT JUDGE