| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| ESTATE OF ALEJANDRO SANCHEZ, *et al.*, | Case No. 1:18-cv-00977-DAD-BAM |
| Plaintiffs, | **ORDER REGARDING SEPTEMBER 25, 2019 INFORMAL DISCOVERY DISPUTE CONFERENCE** |
| vs. | (Doc. Nos. 51, 52, 53, 54) |
| COUNTY OF STANISLAUS, *et al.*, | |
| Defendants. | |

On September 25, 2019, the Court held an Informal Discovery Dispute Conference on the record to address the parties' discovery dispute regarding the production of an autopsy report identified as Bates Nos. COUNTY0182-185 concerning decedent Alejandro Sanchez' death as confidential pursuant to the terms of the parties' stipulated protective order. The parties stipulated to the Court's informal ruling on their dispute. Counsel Paul Masuhara appeared by telephone on behalf of Plaintiffs Estate of Alejandro Sanchez, Bertha Sanchez, Irene Mamourieh, Cristina Girardi, and Marina Sanchez ("Plaintiffs"). Counsel John Whitefleet appeared by telephone on behalf of Defendants County of Stanislaus, Stanislaus County Sheriff's Department, Adam Christianson, Shane Rohn, Brett Babbitt, Eugene Day, Justin Camara, Joseph Knittel, Zebedee Poust, and Hector Longoria

1  ("Defendants"). For the reasons discussed below and on the record, Plaintiffs' request to remove the
2  confidential designation from the autopsy report is DENIED.

3  **I.     RELEVANT BACKGROUND**

4  Plaintiffs are proceeding in this civil rights action against Defendants on claims under 42
5  U.S.C. § 1983 for violation of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution;
6  Article 1, Section 13 of the California Constitution; California's Bane Act; assault/battery; negligence;
7  and wrongful death arising out of the officer-involved death of Mr. Sanchez. (Doc. No. 33.)
8  According to the complaint, Mr. Sanchez was at a truck stop on May 5, 2018 when his vehicle was
9  ordered towed for alleged expired registration tags and multiple Defendant law enforcement officers
10 attempted to detain him. (*Id.*) A physical confrontation lasting several minutes occurred and the
11 Defendant law enforcement officers allegedly took Mr. Sanchez to the ground and climbed on top of
12 him. (*Id.*) Mr. Sanchez subsequently died in custody before arriving at a jail or hospital due to
13 injuries purportedly caused by the Defendant law enforcement officers. (*Id.*)

14 On January 30, 2019, the parties filed a stipulated protective order, which the Court approved
15 on February 1, 2019. (Doc. Nos. 20, 21.) The stipulated protective order allows the parties to
16 designate certain documents as confidential subject to the terms therein if it is determined in good faith
17 that the documents are subject to protection under Federal Rule of Civil Procedure 26(c). (*Id.*) On
18 February 21, 2019, before the complaint had been amended to name the individual Defendant law
19 enforcement officers, Defendants County of Stanislaus, Stanislaus County Sheriff's Department, and
20 Adam Christianson filed a motion for protective order pursuant to the procedures outlined by the
21 stipulated protective order for resolving disputes over designation of documents as confidential. (Doc.
22 No. 22.) This motion sought to maintain certain documents described as Sheriff's Department reports
23 as confidential under the parties' stipulated protective order because the Stanislaus County District
24 Attorney's Office was conducting an ongoing criminal investigation into the events leading to Mr.
25 Sanchez' death. (*Id.*) According to the motion and the declaration in support thereof, public
26 disclosure would undermine the integrity of the investigation and compromise the ability of the
27 Stanislaus County District Attorney's Office to prosecute potential criminal charges. (*Id.*) The Court
28 granted the motion in part, ordering that subjective factual information would be produced as

confidential subject to the parties' stipulated protective order while objective factual information would not be required to be maintained confidentially. (Doc. No. 31.) Plaintiffs sought reconsideration of the Court's order, which District Judge Dale A. Drozd denied on June 20, 2019. (Doc. No. 40.)

Defendants subsequently produced an autopsy report to Plaintiff's counsel concerning the death of Mr. Sanchez as confidential under the terms of the parties' stipulated protective order. (*See* Doc. Nos. 52, 53.) A dispute arose regarding the propriety of the confidential designation and the parties requested an Informal Discovery Dispute Conference pursuant to the Court's procedures for informal resolution of discovery disputes . (Doc. No. 51.) The parties filed two-page letter briefs outlining their respective positions and submitted a copy of the autopsy report to the Court for in camera review. (*See* Doc. Nos. 52, 53.) On September 25, 2019, the Court held the Informal Discovery Dispute Conference on the record. (Doc. No. 54.)

## II.     LEGAL STANDARD

"As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citations omitted). However, Federal Rule of Civil Procedure 26(c)(1) permits the Court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*; Fed. R. Civ. P. 26(c)(1). "The law . . . gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information[.] . . . The Supreme Court has interpreted [Rule 26(c)] as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *See Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1211 (9th Cir. 2002) (citation omitted). Good cause for issuance of a protective order requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d at 424 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir.2003)). Where the protective order was entered pursuant to stipulation of the parties without a prior showing of good cause and a party takes steps to release

documents subject to the stipulated order, then the party opposing disclosure has the burden of establishing that there is good cause to continue protection of the information at issue. *Id.*

In considering a motion regarding the continued propriety of a confidentiality designation pursuant to a stipulated protective order, the Court proceeds in two steps. *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d at 424. First, the Court determines whether "a particularized harm will result from disclosure of information to the public." *Id.* (quoting *Phillips,* 307 F.3d at 1211). Second, where the Court finds that harm will result from disclosure, "then it must proceed to balance 'the public and private interests to decide whether [maintaining] a protective order is necessary." *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d at 424 (quoting *Phillips,* 307 F.3d at 1211). The factors to be considered in balancing these interests are "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id.* at 424 n. 5. Where this two-part test weighs in favor of protection, the Court also considers whether redaction will nevertheless allow disclosure. *Id.* at 525 (citing *Foltz,* 331 F.3d at 1136-1137).

**III.     DISCUSSION**

As to the first step of the analysis, which considers the particularized harm resulting from disclosure, Defendants argue that the particularized harm remains the same as was articulated in their February 21, 2019 motion for protective order, namely that the disclosure would hinder the Stanislaus County District Attorney's ongoing criminal investigation in to the events leading to Mr. Sanchez' death. Defendants contend that, pursuant to the Court's prior order, the autopsy report is properly considered subjective information that should be protected from public disclosure. Plaintiffs, in turn, argue that the ongoing investigation is not a particularized harm because it is uncertain when it will begin or end and the autopsy report is nonetheless properly considered objective, and not subjective, information that should have been produced without a protective order.

4

The Court finds that Defendants have articulated a particularized harm in that disclosure would hinder the ongoing parallel criminal investigation by the Stanislaus County District Attorney's Office into the underlying events. Although Plaintiffs argue that this harm is not particularized because it is uncertain when the investigation will begin or end, Defendants submitted a declaration from District Attorney Birgit A. Fladager support of their prior motion stating that the investigation has begun and once the investigating agency submits findings to her office her goal is to decide whether to file charges within four to six months depending on the scope of the investigation and whether additional investigation is needed. (Doc. No. 22-1.) Thus, the investigation has begun, is presently ongoing, and a best estimate for its completion has been provided. (*Id.*) Moreover, as the Court found in its prior order on Defendants' motion for protective order, Ms. Fladager's declaration identifies specific harm that would result from disclosure of subjective factual information. (*See* Doc. No. 31 at pp. 8-9.) Notably, Defendants do not make broad allegations of harm to potential future investigations, but instead cite to a particular harm to a criminal investigation related to the underlying events that is presently ongoing. This harm is neither speculative nor conclusory.

Both parties cite to the Court's decision in *Noble v. City of Fresno,* 2017 WL 5665850 at *9 (E.D. Cal. Nov. 27, 2017) in arguing whether the autopsy report at issue is objective or subjective. In *Noble,* the parties could not agree to a protective order and the defendants withheld all documents from discovery. *Noble,* 2017 WL 5665850, at *1-2. On Plaintiffs' motion to compel seeking production of documents related to the underlying police shooting incident without any confidentiality designation, the Court considered whether "objective information" should be disclosed subject to a protective order. *See id.* at *4. The Court listed the "coroner's report" within the category of objective information, which the Court ordered to be disclosed without a protective order. *See id.* at *4, 11.

However, *Noble* is not controlling for its characterization of an autopsy report as "objective." As an initial matter, the Court in *Noble* found that the Defendants had failed to establish that protection was warranted for the objective factual information identified therein in part because *Noble* solely involved an internal affairs investigation. *Id.* at 7. At the time of the *Noble* plaintiffs' motion to compel, the District Attorney had already reviewed the case and decided against pursuing criminal

5

charges. *Id.* ("Speculative future criminal charges based on open IA investigations are not entitled to the same protection afforded to ongoing, criminal investigations conducted on the presumption that the subject has committed a crime."). Here, in contrast, Defendants have provided evidence of an ongoing criminal investigation in to the underlying events. (*See* Doc. No. 22-1.) Moreover, the Court declined to conduct an in camera review of the documents at issue in *Noble* and instead deferred to counsel to identify and produce relevant and responsive documents consistent with the Court's order. *Id.* at *9. Here, the Court has reviewed the autopsy report at the parties' request and finds that it is not akin to the types of information which the Court has previously delineated as objective factual information, such as "crime scene logs, Google images, crime scene sketches, 911 recordings, and video footage of the scene." (Doc. No. 31 at p. 8.) Instead, it reflects the subjective medical impressions and conclusions of the medical examiner that is properly subject to protection pending the ongoing criminal investigation in to the events leading to Mr. Sanchez' death.

The Court accordingly proceeds to the second step of the analysis, "namely, whether the balance of public and private interests weigh[s] in favor of . . . confidentiality." *In re Roman Catholic Archbishop of Portland in Oregon,* 661 F.3d at 427. As to whether disclosure will violate any privacy interests, Plaintiffs note that Mr. Sanchez' estate and family members affirmatively seek disclosure. The Court, however, cannot accept the representation that the family has no objection to the potential public dissemination of the autopsy report because it is unclear whether the family knows the contents of the report. Here, the existing protective order precludes counsel from disclosing the autopsy report to Plaintiffs or any other members of Mr. Sanchez' family, as they are not with the permitted scope of disclosure set forth in the parties' stipulated protective order. (*See* Doc. No. 21 at ¶ 3.) Plaintiffs further argue that the information is being sought for a legitimate purpose *i.e.* the cause of Mr. Sanchez' officer-involved death. However, the cause of Mr. Sanchez' death is already known to counsel, as the report has been disclosed to counsel, regardless of whether the autopsy report is permitted to be disclosed to the public. The issue is whether the document should remain confidential and not whether it should be disclosed in the first instance. Additionally, when asked at the Informal Discovery Dispute Conference what purpose Plaintiffs were attempting to accomplish by seeking removal of the confidential designation and what they wanted to do with the report, counsel for

Plaintiffs responded that there was no purpose in particular other than Plaintiffs simply did not believe it was properly designated.

With respect to the remaining factors for balancing the public and private interests at issue, Plaintiffs conclude that the disclosure of the information will not cause a party embarrassment, the information is important to the public health and safety because it involves an officer-involved death, the sharing of information will promote fairness and efficiency, the parties benefitting from confidentiality are public entities or officials, and the case involves issues important to the public.

However, the Court notes "that the mere allegation of misconduct . . ., without more, does not create a public interest sufficiently large to outweigh . . . private interests in confidentiality." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 427. Moreover, unlike the cases cited by Plaintiffs where the public had a strong interest in the disclosure of records related to alleged officer misconduct, the public has no interest in the disclosure of the autopsy report. The document at issue here does not reference any alleged police misconduct and is instead an after-the-fact medical evaluation of the condition of the body. Autopsy reports are essentially records of the opinions of medical examiners. Whether the report and autopsy were done properly are not at issue in this case and, accordingly, there is no public interest in ensuring that the medical examiner has performed his job duties properly. None of the public policies articulated by Plaintiffs underlying disclosure of police misconduct equates to disclosure of autopsy reports. Furthermore, the public has an interest in ensuring that criminal investigations into events such as those which led to Mr. Sanchez' death are conducted thoroughly and that their integrity is maintained. Accordingly, the Court finds that the balance of public and private interests at issue here weighs in favor of confidentiality.

Finally, as the applicable test weighs in favor of protection, the Court also considers whether redaction will nevertheless allow disclosure. Here, based on review of the document at issue, the Court finds that the autopsy report could not easily be redacted to allow disclosure. At the Informal Discovery Dispute Conference, Plaintiffs offered to redact any graphic, offensive, or sensitive medical information. However, doing so would be insufficient because, as discussed above, the Court likewise finds that the subjective impressions and opinions of the medical examiner are subject to protection pending the ongoing criminal investigation by the Stanislaus County District Attorney. Redaction of

those subjective impressions and opinions as well as the sensitive medical information of Mr. Sanchez would essentially amount to redaction of the entire document.  Here, the document as a whole is subject to protection and appropriate redaction would be impracticable.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' request to remove the confidential designation of the autopsy report regarding Mr. Sanchez' death identified as Bates Nos. COUNTY0182-185 is DENIED. The parties are not precluded from revisiting the propriety of the confidential designation following completion of any criminal investigation by the Stanislaus County District Attorney or at any other time that parties may agree is necessary and appropriate.

IT IS SO ORDERED.

Dated: **October 1, 2019**         /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE